Michael W. NOLIN, Plaintiff-Appellant,

v.

DOUGLAS COUNTY, Earl D. Lee,
Defendants-Appellees.

No. 89–8731.

United States Court of Appeals,
Eleventh Circuit.

June 26, 1990.

---

**82.** *Coalition Against a Raised Expressway,* 835     F.2d at 812.

Robert A. Moss, Atlanta, Ga., Lawrence Scott McLarty, Athens, Ga., John Paul Batson, Augusta, Ga., for plaintiff-appellant.

Donald Burton Howe, Jr., Howe & Dettmering, Douglasville, Ga., for defendants-appellees.

Before FAY and COX, Circuit Judges, and GODBOLD, Senior Circuit Judge.

FAY, Circuit Judge:

Michael Nolin, a former lieutenant with the Douglas County, Georgia, Sheriff's Department, brought this section 1983 action against Earl Lee, the sheriff of Douglas County during Nolin's tenure, and Douglas County. Nolin alleges that Lee and Douglas County deprived him of a protected property interest without due process of law when he was suspended and eventually demoted three steps as a result of a covert investigation that he had conducted. Nolin further alleges violations of Georgia law in connection with his demotion. The district court directed a verdict in favor of Lee and Douglas County and entered judgment accordingly. We AFFIRM the district court's judgment.

BACKGROUND

Michael Nolin worked with the sheriff's department of Douglas County, Georgia, from early 1979 until his resignation in December, 1986. During his term, Nolin ascended through the ranks, starting as a deputy sheriff and eventually reaching the position of lieutenant. On September 18, 1986, however, Nolin was suspended from the sheriff's department because of his involvement in an investigation of drug use and distribution within the fire department

and sheriff's department of Douglas County. Shortly thereafter, he resigned.

The investigation commenced in the beginning of September, 1986, when an employee of the fire department, Toni Clogston Smith, approached Nolin and stated that she was experiencing a serious problem. During this conversation, Smith was unwilling to explain what the problem was, but she requested that they meet at a later date in a safe place to discuss the details. Nolin suggested his home and she agreed. On September 8, 1986, Smith and Nolin met at Nolin's house. Smith informed Nolin that she had encountered various individuals in the fire department and the sheriff's department using and dealing narcotics. She would not reveal the identities of the parties involved. After this conversation, Smith advised Nolin to repeat the information to no one, and they made arrangements to meet again on September 11 to discuss the specific instances of drug use and distribution.

After the meeting, Nolin went to see Captain Harper, the officer in charge of internal affairs at the sheriff's department. Harper was in the hospital for minor surgery. Nolin explained his position to Harper—that he had been informed of a possible narcotics problem in the fire and sheriff's department and that he had scheduled a meeting with the informant to discuss the details. Nolin testified that Harper instructed Nolin to go ahead with the scheduled meeting and to take David Camp as a backup. Harper testified that he had been sedated and did not remember instructing Harper to do anything.

On September 11, Nolin met Smith as planned. Smith divulged information regarding the persons and the events which led her to believe that the fire department and the sheriff's office were experiencing internal problems. Specifically, she described a party thrown by another member of the fire department, Brad Basilici, at which cocaine was being used. She also stated that she had attended a party at the home of Jeff Hendrix, also a fire department employee. At that party, Smith saw two deputy sheriffs, Scotty Cosper and Rodney Howard, as well as other fire department employees in a bedroom, where what appeared to be cocaine was being prepared for use.

After Smith related these instances to Nolin, Nolin responded that he would have to tell his superiors so that they could further investigate. On September 12, 1986 Nolin met with Harper to discuss the details of what Smith had informed him. Harper advised Nolin that Nolin would no longer be conducting the investigation and that it would have to be reported to his superior officer. Accordingly, Harper reported the investigation to Major Dukes who in turn reported it to Sheriff Earl Lee. Harper was then relieved of any further investigation.

On September 16, 1986, Lee called a meeting to discuss Nolin's conduct throughout the course of Nolin's surreptitious investigation. During that meeting, Lee confronted Nolin about Nolin's failure to follow the chain of command and distribution of information regarding the internal investigation to external sources. For example, Lee discovered that Nolin had drafted memoranda documenting his daily experiences on the job and had given these documents to his father. Lee also learned that Nolin had discussed the drug investigation with Nolin's father. At the conclusion of the meeting, Lee decided to suspend Nolin until completion of the pending narcotics investigation, which had continued under the supervision of the sheriff and the district attorney. On September 18, 1986, Mike Nolin was suspended without pay because of his failure to follow the chain of command and his divulging sensitive information to people outside the department.

Nolin's suspension ended on November 1, 1986, when the investigation was completed. Upon returning to the sheriff's department, Nolin was demoted three steps. Lee, fearing that Nolin was not ready to carry a gun while on duty, assigned Nolin to the jail division. Shortly thereafter, Nolin resigned.

On March 9, 1988, Nolin filed a complaint with the district court, naming Earl Lee and Douglas County as defendants. The

first count alleges that defendants deliberately harassed, humiliated and frustrated plaintiff in order to remove him from his position as deputy sheriff, thereby "depriving Plaintiff of his constitutional rights." R1-1-5. In Count II, Nolin alleges that defendants' actions constitute a tortious interference with plaintiff's employment in violation of state law. The third count alleges that defendants violated plaintiff's procedural due process rights because plaintiff was forced to resign without a hearing and an opportunity to be heard. Count IV states that defendants' actions violated plaintiff's substantive due process rights. The fifth and final count is an allegation of intentional infliction of emotional distress.

Defendant Douglas County responded to the complaint with an immunity defense. Likewise, Lee defended on the ground that he is immune from prosecution because he reasonably believed that his actions were lawful and that he acted within the scope of authority in discharging his duties. Additionally, both defendants asserted a defense based on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *partially overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986), that is, plaintiff failed to exhaust the remedies available to him under state law regarding his claim that defendants infringed upon his procedural due process rights. Defendants filed neither a motion to dismiss nor a motion for summary judgment based on their claim of immunity.

On March 2, 1989, after completion of discovery, Nolin's attorney submitted a proposed pretrial order setting forth the legal issues to be tried. The issues are listed as follows:

(a) Did Defendants violation [sic] 42 U.S.C. Sec. 1983;

(b) Did Defendants tortiously interfere with Plaintiff's employment;

(c) Did Defendants violate Plaintiff's procedural and substantive due process rights guaranteed him by the 5th and 14th Amendments to the United States Constitution;

(d) Did Defendants willfully cause emotional distress to Plaintiff.

R1-21-7. Having submitted the pretrial order with opposing counsel's approval, Nolin's attorney then attempted to amend it to include a First Amendment claim, as explicated in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (Denial of a benefit because of a person's constitutionally protected speech or associations is impermissible.). The district court denied Nolin's motion to amend, reasoning that "the plaintiff has waited too late to seek to amend his complaint. The discovery period has expired, and a pretrial order has been filed. None of the pleadings referenced a First Amendment claim, and this court finds that the failure to include such a claim in the pretrial order was not mere inadvertence." R1-12-2. Subsequently, Nolin's attorney moved the court to reconsider its decision denying him the opportunity to amend. The court adhered to its initial ruling.

Trial commenced on August 28, 1989. At trial, Nolin's counsel called several witnesses who explained the series of events leading to the demotion and subsequent resignation of Nolin. Counsel also introduced into evidence several documents, including "memos for record" drafted by Nolin, various memoranda distributed among the officers of the sheriff's department, and medical records. Nolin's attorney failed, however, properly to offer into evidence the guidelines governing public employment in Douglas County. In fact, Nolin's attorney proffered two different sets of regulations at different times, one during the examination of Lee and one at the close of plaintiff's case. Because Nolin's counsel failed to properly authenticate the documents, defendants' objections to their admission were sustained. Nolin's attorney requested the court to take judicial notice of the guidelines, but the court refused, reasoning that the guidelines are not ordinances or laws.

At the close of Nolin's case, Lee and Douglas County moved for a directed verdict. The court granted their motions:

As to Douglas County I am going to grant the motion dismissing as to Douglas County because there is a total failure to show that whatever acts were taken in this case were in accordance with the custom, ordinance, practice, [or] decision of the county. And that is what *Monell vs. Department of Social Services of the City of New York* [,] 436 [U.S.] 658[, 98 S.Ct. 2018, 56 L.Ed.2d 611,] would require....

....

As to the qualified immunity, that question is not before the court because.... [although] it was pled in this case, ... it was not preserved for trial in [the] pretrial order.

I assume that the plaintiff consented to dismissal of the tortious interference with employment. But I will grant the motion for that.

I am going to grant the motion as to Earl Lee individually and as the sheriff because of two reasons. One is, I do not believe there is an expectation of property right interest in this case....

And for the second reason, I believe there is an adequate state remedy in this matter as prescribed in *Parratt vs. Taylor* and the cases that followed it.

R7–23–25.

Nolin has appealed to this court seeking a reversal of the judgment entered in favor of Lee and Douglas County.

DISCUSSION

On appeal, Nolin raises a number of issues. First, Nolin claims that the district court abused its discretion when it denied Nolin's attorney the opportunity to amend the complaint to include a claim for wrongful retaliatory discharge as a result of speech protected by the First Amendment to the United States Constitution. Next, Nolin asserts that the district court erred in refusing to admit into evidence the guidelines for Douglas County public employment. Third, Nolin argues that the district judge erred in granting defendants' motion for a directed verdict, because the evidence indicates that Nolin had a property interest in his employment and was not accorded due process before being demot-

ed. Fourth, Nolin challenges the district judge's application of *Parratt v. Taylor* to the instant case. Finally, Nolin contends that the pendent claim for intentional infliction of emotional distress was not ruled upon and substantial evidence exists to support the claim.

First, we review the district court's order denying Nolin the opportunity to amend the pretrial order to include a claim for retaliatory discharge in violation of the First Amendment. After the period for amendment as a matter of course has expired, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Stevens v. Gay*, 864 F.2d 113, 116 (11th Cir.1989). We review a district court's denial of leave to amend for abuse of discretion. *Stevens*, 864 F.2d at 116; *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir.1981).

In determining whether to grant a motion to amend a pleading, the district court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Gregory*, 634 F.2d at 203. While the district court is accorded discretion in arriving at its decision, a justifying reason must be apparent for denial of a motion to amend. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) (per curiam). Accordingly, we review the record to determine whether a justifying reason exists for the district court's ruling.

The court stated that the reason for its decision was Nolin's undue delinquency in requesting an amendment. It was not until after both parties had completed discovery and the district judge had been informed in detail in the pretrial report of the witnesses to be called, the legal issues to

be tried, the procedures to be utilized, the voir dire questions to be asked, the physical evidence to be introduced, and all other pretrial administrative matters, that Nolin moved for leave to amend the complaint. Concededly, this is a close case because of the similarity between Nolin's procedural and substantive due process claims and his attempted First Amendment claim, all of which require similar evidence. However, because both the parties and the court were fully prepared for trial and the addition of a new claim would have re-opened the pretrial process and delayed the trial, and because Nolin's attorney had sufficient opportunity to request a timely amendment before the pretrial order had been submitted, we hold that the district court did not abuse its discretion in denying Nolin's motion to amend. Requesting an amendment at such a late stage of the proceedings and in the absence of unusual circumstances undermines the purpose of the pretrial order and frustrates any attempt at judicial economy. "At some point in time delay on the part of a plaintiff can be procedurally fatal." *Gregory,* 634 F.2d at 203. Accordingly, we shall not consider the merits of Nolin's First Amendment claim.[1]

█ Next, we consider whether the district court committed reversible error when it refused to admit into evidence a copy of the guidelines allegedly governing the relationship between Douglas County and its employees. Federal Rule of Evidence 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The decision regarding whether a document has been properly authenticated lies in the sound discretion of the trial judge. *Stuckey v. Northern Propane Gas Co.,* 874 F.2d 1563, 1574 (11th Cir.1989); *Bury v. Marietta Dodge,* 692 F.2d 1335, 1338 (11th Cir.1982) (per curiam). Accordingly, we review the district court's ruling for abuse of discretion.

Nolin's first attempt at admission of the guidelines occurred during the cross-examination of Lee, when Nolin's attorney approached Lee with a document, representing it to be a copy of the regulations controlling the employment relationship between Douglas County and its employees. Lee's attorney objected to the admission of the document on the grounds that he had never seen it before and did not believe it to be a correct copy of the rules. Nolin's attorney requested the court to take judicial notice of it; the court declined. Counsel then tried to authenticate the document by asking Lee if he was familiar with the document. Lee responded that he was "somewhat familiar" with it. R6–94. The court ruled that Lee's testimony was insufficient to support a finding that the document was what it was represented to be.

Counsel for Nolin proffered another document at the close of his case. From the record, it appears that this document differed from the document proffered during Lee's testimony.[2] Nolin argued that the document was self-authenticating because

---

1. Notwithstanding his attempt to amend, Nolin's attorney argues that the complaint on its face states a claim for retaliatory discharge under the First Amendment. Counsel continues that he inadvertently failed to include the First Amendment claim in the pretrial order, and because the First Amendment claim had been stated in the complaint, the trial court should have allowed amendment of the pretrial order. The record simply does not support this argument. Nowhere in the complaint or pretrial order did Nolin allege that the Sheriff's action was "based on ... public statements critical of the [Sheriff's] policies ... [a]nd ... that this public criticism was within the First and Fourteenth Amendments' protection of freedom of speech." *Perry v. Sindermann,* 408 U.S. at 598, 92 S.Ct. at 2698; *see Fed.R.Civ.P. 8(a).*

2. In objecting to the admission of the document at the close of plaintiff's case, counsel for defendants stated:

> Your honor, the document you were asked to take judicial notice of was a different document than this. It had something to do with civil service which this document is not entitled civil service. We think in light of the fact they already attempted to introduce a document that is different than this one with the authenticity or authentification of it would be crucial.

R7–3. Nolin's attorney did not challenge counsel's observations.

the personnel director of Douglas County, Gloria Turner, certified the document to be a true and correct copy of the Douglas County Merit System. The court declined, however, to admit the document into evidence reasoning that it was not under seal in accordance with Fed.R.Evid. 902 and, therefore, not self-authenticating. As an additional ground for exclusion, the court asserted that the document had not been included in the pretrial order as a proposed exhibit.

■ The district court did not abuse its discretion in excluding the guidelines. When Nolin's attorney initially attempted to admit the exhibit, the only authenticating evidence produced was Lee's statement that he was somewhat familiar with the document. The district judge was not satisfied. This Circuit recently addressed a similar situation. *Stuckey*, 874 F.2d 1563. In *Stuckey*, the district court admitted, over objection, documents purporting to be minutes of an association's meeting, authenticated through the testimony of a committee member who said the documents " 'looked like he expected them to look.' " *Id.* at 1574. This Court affirmed, reasoning that the district court did not abuse its discretion and that the objecting party "offered no evidence to counter the minimal showing ... that the documents were authentic." *Id.*

Using the reasoning from *Stuckey*, we conclude that the district court did not err in excluding the alleged rules governing Douglas County public employment. First, *Stuckey* makes clear that the district court is accorded discretion in ruling on the authenticity issue; therefore, unless the district court exceeded the scope of its discretion, we will defer to the district court's decision. Second, Lee's attorney offered sufficient evidence to bring into question the authenticity of the documents, namely that two different documents purporting to be the controlling guidelines had been offered. Accordingly, we affirm the district

court's exclusion of the documents alleged to be the rules governing public employment in Douglas County.

Having found no error in the district court's refusal to consider Nolin's untimely First Amendment claim and to admit a purported copy of the Douglas County public employment guidelines, we now determine whether the court erred in granting a directed verdict at the close of plaintiff's case. The former Fifth Circuit has established our standard of review for rulings on motions for a directed verdict:

> On motions for directed verdict ... the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury.

*Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc); *see also Adams v. Bainbridge–Decatur County Hosp. Auth.*, 888 F.2d 1356, 1363 (11th Cir.1989); *Finch v. City of Vernon*, 877 F.2d 1497, 1501–02 (11th Cir.1989).

■ Nolin argues that the evidence sufficiently supported his procedural and substantive due process claims and his claim for intentional infliction of emotional distress, and therefore, the trial judge should have sent the case to the jury.[3] We disagree. "The requirements of procedural

---

**3.** Nolin does not challenge the district court's decision to direct a verdict in favor of Lee and Douglas County as to the tortious interference with employment claim. In fact, Nolin's attorney conceded that "Sheriff Lee and Douglas County ... would not be able to tortiously interfere with [Nolin's employment]." R7–22. Consequently, we will not consider Nolin's tortious interference claim on appeal.

due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *see Adams,* 888 F.2d at 1363. To acquire a protected property interest, a person must have more than a desire for or unilateral expectation of a benefit; one must have a legitimate claim of entitlement to such a benefit. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Adams,* 888 F.2d at 1363. The sufficiency of a person's claim of entitlement to continued employment must be determined by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Adams,* 888 F.2d at 1363; *Nicholson v. Gant,* 816 F.2d 591, 597 (11th Cir.1987) (per curiam). Accordingly, we must analyze the law of Georgia to determine whether Nolin held a property interest in continued employment.

▆▆▆▆ Section 34–7–1 of the Official Code of Georgia provides:

> If a contract of employment provides that wages are payable at a stipulated period, the presumption shall arise that the hiring is for such period, provided that, if anything else in the contract indicates that the hiring was for a longer term, the mere reservation of wages for a lesser time will not control. An indefinite hiring may be terminated at will by either party.

O.C.G.A. § 34–7–1 (1988). Hence, under Georgia law an at-will employee "typically does not have a reasonable expectation of continued employment sufficient to form a protectable property interest." *Wofford v. Glynn Brunswick Memorial Hosp.,* 864 F.2d 117, 119 (11th Cir.1989) (per curiam). A public employee who can be terminated only for cause, however, may legitimately claim an entitlement to a property interest in continued employment. *Wofford,* 864 F.2d at 119; *Ogletree v. Chester,* 682 F.2d 1366, 1370 (11th Cir.1982); *Brownlee v. Williams,* 233 Ga. 548, 212 S.E.2d 359, 362 (1975). Generally, a showing that a public employee occupies a position from which he

can be terminated only for cause is made by reference to laws, regulations, or personnel policies. *See, e.g., Brownlee,* 212 S.E.2d at 362 ("Employees who are covered by the Fulton County Civil Service Act have a property interest in their continued employment."); *Glenn v. Newman,* 614 F.2d 467, 471 (5th Cir.1980) (City regulations defining the conditions of plaintiff's employment created reasonable expectation of property interest.); *Barnett v. Housing Auth.,* 707 F.2d 1571, 1576 (11th Cir.1983) (Court found that plaintiff could be discharged only for cause under the personnel policy of the Atlanta Housing Authority.). Consequently, a determination as to whether Nolin could have been terminated only for cause requires examination of the personnel guidelines through which Douglas County administered its employment policies. While Nolin's attorney attempted to admit a copy of such guidelines on two occasions, the trial court properly excluded it because of the lawyer's failure to adequately establish a foundation for its admission. Thus, the record contains no evidence from which a jury could conclude that Nolin possessed a property interest in continued employment with the sheriff's department.

Having failed to establish a property interest in his continued employment, Nolin's procedural and substantive due process claims are doomed. Procedural due process regards an employee's right to be given a hearing, albeit not necessarily elaborate, to determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action," and to give the employee an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545–46, 105 S.Ct. 1487, 1495–96, 84 L.Ed.2d 494 (1985). An employee's right to procedural due process, however, depends on his having had a property interest in continued employment. *Id.* at 538, 105 S.Ct. at 1491; *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Adams,* 888 F.2d at 1363. A violation of a public employee's right to substantive due process occurs when an employer deprives the employee of a " 'property interest for an improper motive

and by means that [are] pretextual, arbitrary and capricious,'" regardless of whether or not a hearing was held. *Barnett*, 707 F.2d at 1577 (quoting *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir.1982)). Since Nolin failed to prove that he possessed a property interest in his continued employment, the trial judge did not err in directing a verdict in favor of Lee and Douglas County regarding Nolin's substantive and procedural due process claims.

Finally, Nolin argues that the district court erroneously directed a verdict for defendants regarding his pendent claim for intentional infliction of emotional distress.[4] In order to maintain a claim for intentional infliction of emotional distress under Georgia law, a plaintiff must show that "defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." *Georgia Power Co. v. Johnson*, 155 Ga. App. 862, 863, 274 S.E.2d 17, 18 (1980); *see Morgan v. Morgan*, 256 Ga. 250, 347 S.E.2d 595 (1986). If threats form the basis of plaintiff's claim, then the threats must have been "outrageous and egregious," and plaintiff must introduce evidence such that the threats can be attributed to defendants. *Sossenko v. Michelin Tire Corp.*, 172 Ga.App. 771, 324 S.E.2d 593, 594–95 (1984). If the intentional infliction of emotional distress claim "directly stem[s] from the termination [of at-will employment] and [is] clearly not independent of the severance of employment," then plaintiff's claim should be dismissed. *Mr. B's Oil Co. v.*

*Register*, 181 Ga.App. 166, 351 S.E.2d 533, 535 (1986).

From the record it appears that Nolin's intentional infliction of emotional distress claim is twofold. First, Nolin complains that the sheriff demoted him unlawfully. *Register*, however, bars this claim because, as we have already determined, no evidence showing that Nolin was anything but an at-will employee was before the jury, and this claim is "clearly not independent of the severance of employment." *Id.* Second, Nolin avers that he received threats from various colleagues. Specifically, in response to the district judge's request for specific statements and persons, Nolin testified:

> Larry Lambert who is the chief jailer ... would tell me that I was in danger. That there were officers that wanted to hurt me....
>
> Captain J.R. Allen who was the assistant chief jailer came to me and told me I was in danger, that there were officers that wanted to hurt me.
>
> .... Dr. Hall came to me ... and told me ... he was hearing officers talking about doing me physical harm.
>
> Lieutenant Skinner ... was talking to me one morning telling me I was in danger but he quit talking when I think it was Lambert walked in. That's all I can recall.

R5–133. Clearly, the statements made by these people do not rise to the requisite level of "outrageousness and egregiousness." *Sossenko*, 324 S.E.2d at 595.[5] Further, Nolin has adduced no evidence to

4. Actually, the district judge did not rule explicitly that Lee and Douglas County were entitled to a directed verdict on the mental suffering claim. However, because the court entered a judgment in favor of Lee and Douglas County, we assume that Nolin's intentional infliction of emotional distress claim was included in the directed verdict.

5. In *Sossenko*, the court held that statements by superiors instructing that plaintiff would be "in jeopardy" and to observe silence about certain matters if he wanted to "enjoy his retirement and 'to keep living'" were not sufficiently outrageous to maintain a claim for intentional infliction of emotional distress. *Sossenko* 324 S.E.2d at 594–95.

Instances in which plaintiffs have adequately maintained a claim for intentional infliction of emotional distress include: where defendant attempted to collect a bill by frightening the plaintiff at gunpoint, *American Fin. & Loan Corp. v. Coots*, 105 Ga.App. 849, 125 S.E.2d 689 (1962); where during the burial of a family member, mourners were physically threatened by defendant, *Stephens v. Waits*, 53 Ga.App. 44, 184 S.E. 781 (1936); where defendant threatened an eleven year old girl with calling the police and having her thrown in jail if she did not allow defendant to enter the house, *Delta Finance Co. v. Ganakas*, 93 Ga.App. 297, 91 S.E.2d 383 (1956).

indicate that the alleged threats are attributable to Lee in either his individual or representative capacity. *See id.* at 595.

Because we find for Lee and Douglas County on the merits, we need not address the immunity issue or the applicability of *Parratt v. Taylor.*

For the foregoing reasons, we affirm the directed verdict in favor of Lee and Douglas County. The judgment is AFFIRMED.