**Martin J. SMITH, Plaintiff,**

v.

**UPSON COUNTY, GA.,
et al., Defendants.**

**Civ. A. 93–242–2–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 8, 1994.

Harlan S. Miller, III, Atlanta, GA, for plaintiff.

Truitt A. Mallory, Thomaston, GA, James R. Morgan, Jr., Winston–Salem, NC, for defendants.

### ORDER

OWENS, Chief Judge.

Before the court is defendants' motion for summary judgment. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

### FACTS

In 1984, plaintiff Martin J. Smith was hired by the Upson County, Georgia Sheriff's Department to work as an undercover investigator. Subsequently, plaintiff was assigned to a multijurisdictional drug task force, a law enforcement organization staffed by officers from various local law enforcement agencies. Captain Dan Greathouse of the Upson County Sheriff's Department was commander of the multijurisdictional drug task force. Captain Greathouse served as plaintiff's immediate supervisor in the task force.

In December 1988, the Upson County Sheriff's Department, along with other coun-

ty offices, petitioned the Upson County Board of Commissioners to create a civil service system for county employees. On December 30, 1988, the board of commissioners passed a resolution creating a civil service system for Upson County.

On June 28, 1991, defendant Mountain Greene assumed the office of Sheriff of Upson County.[1] Prior to Greene taking office, the deputy sheriffs in the sheriff's department had received overtime pay for hours worked over 171 hours per pay period. However, when Greene took office, he implemented a new policy providing for compensatory time off in lieu of overtime pay. Greene notified the employees of the sheriff's department of the policy change at two meetings held shortly after he took office. No employee of the sheriff's department expressed opposition to the policy change.

In June 1992, plaintiff received information that his supervisor, Captain Dan Greathouse, was involved in illegal wiretapping. Shortly after receiving the information, plaintiff arranged a meeting with agents of the Georgia Bureau of Investigation ("G.B.I."), the F.B.I., and an Assistant United States Attorney to discuss the information. At the meeting, it was decided that an investigation of the allegations was in order. As the investigation concerned allegations against Greathouse, a decision was made not to notify Greathouse of the investigation. Further, plaintiff did not inform Sheriff Greene or Chief Deputy Daniel Kilgore of the investigation or the allegations against Greathouse. Plaintiff did, however, speak with several other officers in the drug task force about the investigation. Subsequently, Captain Greathouse received information that plaintiff was involved in an investigation and that plaintiff was attempting to keep the investigation a secret from Greathouse.

On June 25, 1992, Greathouse called plaintiff on the telephone and asked plaintiff for information regarding plaintiff's investigation. Plaintiff, however, informed Great-

---

1. Greene was elected Sheriff of Upson County in a special election after the death of Sheriff Merrill Greathouse. Plaintiff, however, supported Greene's opponent in the special election and, when approached by Greene about plaintiff's support in the general election, informed Greene that he preferred not to be involved.

house that he could not talk about the investigation. The next day, Greathouse called plaintiff into his office and again asked plaintiff for information concerning the investigation. Again, plaintiff refused to discuss the investigation. Greathouse then told plaintiff that he was going to request that plaintiff be transferred out of the drug task force. Accordingly, Greathouse wrote a letter to Sheriff Greene, which stated:

> I am requesting that Narcotics Task Force Agent Marty Smith be re-assigned to the Upson County Sheriff's Office. In the recent weeks, Smith has been conducting unauthorized investigations and has deliberately withheld this information from the commander. I feel that Smith does not trust me and I further feel that due to this mistrust, it would be impossible for me to supervise Smith.

Subsequently, a meeting was held involving Sheriff Greene, Chief Deputy Kilgore, Captain Greathouse, and plaintiff. During the meeting, plaintiff accused Greathouse of revealing confidential information to "friends and acquaintances" and of participation in an illegal wiretap. Plaintiff also admitted that he was participating in an investigation of Greathouse's involvement with the alleged wiretap and that the G.B.I. had instructed him to keep the matter quiet. At the conclusion of the meeting, Sheriff Green informed plaintiff that he was being transferred out of the task force and into the investigations division of the sheriff's department. Plaintiff's transfer, however, did not affect his salary, benefits, or classification.

On Friday, March 12, 1993, plaintiff arrived at work with a patch over his right eye. Plaintiff explained to his supervisor that he had been hit in the eye with a hockey stick. However, despite the injury, plaintiff worked a full day. On March 13 or 14, plaintiff's wife telephoned plaintiff's supervisor and informed the supervisor that plaintiff would not be at work on March 15 because of a doctor's appointment to have plaintiff's eye examined. After being examined by the doctor, plaintiff was informed that he had can-

cer, and that it would be necessary to surgically remove his right eye.

On March 15, 1993, plaintiff's wife informed plaintiff's supervisor that plaintiff would be out of work for six to eight weeks because of eye problems. Plaintiff's wife, however, did not explain to the supervisor the exact nature of plaintiff's medical problem. Plaintiff's supervisor reported this conversation to Chief Deputy Kilgore. On March 30, Kilgore contacted plaintiff and asked plaintiff to provide a doctor's certificate to confirm plaintiff's medical condition.[2] Kilgore also asked plaintiff about a falsified search warrant that had surfaced in a criminal prosecution. Plaintiff denied having any knowledge of the warrant.

After ten days had passed, and Kilgore had received no certificate from plaintiff, Kilgore contacted plaintiff's wife and again requested a doctor's certificate to confirm plaintiff's medical condition. During this same period of time, it was determined that plaintiff was responsible for the false search warrant that Kilgore had questioned plaintiff about on March 30. Instead of securing the signature of a magistrate on the search warrant, plaintiff had signed the warrant himself in an illegible fashion.

On April 16, 1993, Chief Deputy Kilgore served notice on plaintiff that effective April 26, 1993, plaintiff was terminated from his employment with the Upson County Sheriff's Department. Plaintiff was informed that the basis for the discharge was (1) plaintiff's failure to provide a doctor's certificate and (2) forging a magistrate's signature on a search warrant. Kilgore also informed plaintiff of plaintiff's right to respond to the proposed termination within three working days of receipt of the notice. Upon receipt of Kilgore's letter, plaintiff responded to the allegations contained therein. However, after consideration of plaintiff's response, Kilgore informed plaintiff by letter dated April 23, 1993 that the decision to terminate plaintiff would stand. In addition, Kilgore in-

---

**2.** Paragraph 5.405 of the Upson County Personnel Policies provides: "Sick Leave requires the approval of the appropriate appointing authority or designee." Further, paragraph 5.406 states:

"A medical statement signed by a licensed physician may be required to substantiate sick leave for ... absence of three (3) or more consecutive days...."

formed plaintiff of his right to appeal the decision.

On April 29, 1993, plaintiff requested a hearing concerning the discharge. On Friday, May 14, 1993, plaintiff was informed that a hearing would be held on the following Monday, May 17, 1993. On the morning of the hearing, the County Attorney received a note from plaintiff, which stated: "Your proposed hearing date of May 17, 1993, is in conflict with my calendar. On this date I have an important meeting with officers of the court in Macon." Despite plaintiff's absence, a hearing was held on May 17, 1993, and the hearing officer upheld plaintiff's discharge. At plaintiff's request, a second hearing was held on April 12, 1994, before a different hearing officer. However, the second hearing officer also upheld plaintiff's discharge.

On July 26, 1993, plaintiff filed suit against Upson County, Sheriff Mountain Greene, Chief Deputy Daniel Kilgore, and Captain Dan Greathouse under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., 42 U.S.C. §§ 1983 and 1988, and the First and Fourteenth Amendments to the United States Constitution.[3] On May 25, 1994, defendants filed this motion for summary judgment. Defendants contend that they are entitled to judgment as a matter of law on all of plaintiff's claims. Further, the individual defendants assert that they are entitled to summary judgment on the basis of qualified immunity. On June 2, 1994, plaintiff amended his complaint to include a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. In defendants' reply to plaintiff's response to defendants' motion for summary judgment, defendants also contend that they are entitled to summary judgment on plaintiff's claim under the Americans with Disabilities Act.

## DISCUSSION

[T]he plain language of [Federal Rule of Civil Procedure] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *United States v. Metropolitan Petroleum Co.*, 743 F.Supp. 820, 823 (S.D.Fla.1990). However, "[i]n determining whether a factual issue exists, a court must consider all the evidence in a light most favorable to the non-moving party." *Rollins v. Techsouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987).

### I. Fair Labor Standards Act

In his complaint, plaintiff alleges that defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., by failing to pay plaintiff overtime wages for hours worked in excess of 171 hours per work cycle. Defendants, however, contend that "plaintiff's FLSA claim fails as a matter of law because (1) the plaintiff was ... not an 'employee' covered by the FLSA; and (2) there was an agreement between Sheriff Greene and the plaintiff such that giving the plaintiff compensatory time off in lieu of overtime did not violate the FLSA." (Def.s' Br. at 2.)

### A. Covered Employee

The FLSA defines an "employee" as:

any individual employed by a State, political subdivision of a State, or an interstate governmental agency, **other than such an**

---

**3.** Plaintiff has also filed suit against Upson County in the Superior Court of Upson County. *See Smith v. Upson County*, Civil Action No. 94–V–255. In that suit, plaintiff contends that defendant Upson County breached plaintiff's employment contract in that "[n]o legitimate cause existed to justify Plaintiff's termination."

individual ... **who is not subject to the civil service laws of the State,** political subdivision, or agency which employs him; and ... is selected by the holder of such an office to be a member of his personal staff.

29 U.S.C. § 203(e)(2)(C)(i), (ii) (emphasis added). Defendants contend that plaintiff was not subject to the Upson County Civil Service System and, therefore, not a covered employee within the meaning of the FLSA. Defendants' contention, however, is without merit.

On December 30, 1988, the Upson County Board of Commissioners adopted a resolution "CREATING A SYSTEM OF CIVIL SERVICE FOR EMPLOYEES OF UPSON COUNTY, GEORGIA, OTHER THAN ELECTED OFFICIAL OR PERSONS APPOINTED TO POSITIONS FOR A SPECIFIED TIME." (Pl.'s Br. Ex. 3.) The resolution provides: "[U]pon the written application of all elected County Officers, Commission, Board or Body having the power of appointment, employment or removal of employees of the officer, department, commission, board or body ... IT IS HEREBY RESOLVED that a Civil Service System of employment is hereby created for employees of Upson County, Georgia...." (Pl.'s Br. Ex. 3.) The language contained in the December 30 resolution tracks the language contained in O.C.G.A. § 36–1–21(a) & (b). This code section provides the authorization under which a county may create a civil service system. Therefore, as plaintiff falls within the scope of the December 30 resolution, plaintiff is "subject to the civil service laws of the ... political subdivision ... which employs him." 29 U.S.C. § 203(e)(2)(C)(i). Accordingly, plaintiff is an "employee" within the meaning of the FLSA.

*B. Agreement*

■ Defendants contend that an agreement existed between plaintiff and Sheriff Greene by which plaintiff would receive compensatory time off in lieu of overtime pay.

Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive ... in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.... A public agency may provide compensatory time ... pursuant to ... an agreement or understanding arrived at between the employer and employee before the performance of work.

29 U.S.C. § 207(*o*)(1) & (2). The Wage and Hour Division of the Department of Labor has issued regulations interpreting the scope of § 207(*o*). *See* 29 C.F.R. § 553.23. These regulations provide:

An agreement or understanding may be evidenced by a notice to the employee that compensatory time off will be given in lieu of overtime pay. In such a case, an agreement or understanding would be presumed to exist for purposes of section 7(*o*) with respect to any employee who fails to express to the employer an unwillingness to accept compensatory time off in lieu of overtime pay.

*Id.* § 553.23(c)(1). Further, in *International Association of Firefighters, Local 349 v. City of Rome,* 682 F.Supp. 522 (N.D.Ga.1988), the District Court for the Northern District of Georgia, in addressing a similar provision, held that "an implied agreement ... may not be inferred from a continuation in working and accepting pay checks *where there exists contemporaneous protest to the employer's institution of [the] policy....*" *City of Rome,* 682 F.Supp. at 529 (emphasis added); *see also id.* n. 3 (citing 29 C.F.R. § 553.23(c)).

In the case *sub judice,* plaintiff concedes that "he did not at any time express to Sheriff Greene, or to any of the higher ranking officers in the department, an unwillingness to accept compensatory time off in lieu of overtime pay." (Def.s' Statement Material Fact ¶ 6; Pl.'s Resp. ¶ 6 (admitted).) In the absence of "contemporaneous protest," an agreement is presumed to exist. *See* 29 C.F.R. § 553.23(c)(1). Accordingly, defendants' motion for summary judgment on plaintiff's claim under the FLSA is **GRANTED.**

## II. First Amendment

In his complaint, plaintiff asserts that defendants transferred plaintiff out of the multijurisdictional drug task force and terminated plaintiff's employment in retaliation for plaintiff's exercise of his First Amendment right of free speech.

> In order for a public employee to establish that an employer conditioned his or her job in a way that burdened impermissibly a constitutional right, the employee must first demonstrate that the asserted right is protected by the Constitution and that he or she suffered "adverse employment action" for exercising the right. Upon making these two showings, the employee is entitled to prevail if the adverse employment action was taken in such a way as to infringe the constitutionally protected right.

*McCabe v. Sharrett,* 12 F.3d 1558, 1562 (11th Cir.1994).

### A. Constitutional Protection for Asserted Right

Plaintiff contends that the actions of defendants impermissibly burdened his right of free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution. Defendants concede that the exercise of this right is entitled to constitutional protection.

### B. Adverse Employment Action

■ "For a public employee to establish that an employment action has infringed a constitutional right the employee also must demonstrate that he or she has suffered some sort of adverse employment action for exercising the right." *McCabe,* 12 F.3d at 1563. Plaintiff contends that he suffered two adverse employment actions. First, plaintiff asserts that his transfer from the multijurisdictional drug task force to the investigations division of the sheriff's department constituted an adverse employment action. Second, plaintiff contends that his discharge constituted an adverse employment action.

The parties do not dispute that plaintiff's discharge from employment with the Upson County Sheriff's Department constituted an adverse employment action. Defendants, however, assert that plaintiff's transfer from the drug task force to the investigations division was not an adverse employment action.

Plaintiff suffered no loss in pay, benefits or classification as a result of his transfer. Plaintiff, however, contends that the transfer constituted an adverse employment action because the transfer deprived him of the use of a county car. Although the use of a county car may be desirable by an employee, the action of a public employer in depriving an employee of the use of such a car, standing alone, does not constitute an adverse employment action sufficient to give rise to a cause of action under 42 U.S.C. § 1983. *Cf. McCabe,* 12 F.3d at 1563–64 (transfer considered adverse employment action when transfer adversely affected eligibility for salary increases, and new position involved "less responsibility and more menial tasks"); *Hudson v. Southern Ductile Casting Corp.,* 849 F.2d 1372, 1375 (11th Cir.1988); *Cargile v. Horton Homes, Inc.,* 851 F.Supp. 1575, 1578 (M.D.Ga.1994).

### C. Did the adverse employment action infringe the protected right?

■ "In cases where the state denies discharging the employee because of speech, a four-stage analysis has evolved. *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989); *see also Williams v. Roberts,* 904 F.2d 634, 637 (11th Cir.1990). First, the court must determine if the "employee's speech may be 'fairly characterized as constituting speech on a matter of public concern.' " *Bryson,* 888 F.2d at 1565. Second, if the speech addresses a matter of public concern, the court must then conduct a balancing test in which it weighs the First Amendment interests of the employee against " 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* (quoting *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). Third, if the employee's claim survives the balancing test, the fact-finder must determine "whether the employee's speech played a 'substantial part' in the government's decision to ... discharge the employee." *Id.* Finally, if the fact-find-

er determines that the employee's speech played a substantial part in the employee's discharge, the state must prove by a preponderance of the evidence that it would have discharged the employee even in the absence of the speech. *Id.*

### 1. Public Concern

■ As a threshold matter, the court must determine whether the speech at issue involved a matter of public concern. To determine whether an employee's speech is of public concern, the court must examine the " 'content, form, and context of a given statement, as revealed by the whole record.' " *Kurtz v. Vickrey,* 855 F.2d 723, 727 (11th Cir.1988); *see also Goffer v. Marbury,* 956 F.2d 1045, 1050 (11th Cir.1992). There is no question that plaintiff's statements to the G.B.I., F.B.I., and the Assistant United States Attorney, and plaintiff's statements at the meeting with Greene, Kilgore, and Greathouse, related to matters of public concern. In *Bryson v. City of Waycross,* 888 F.2d 1562 (11th Cir.1989), the Eleventh Circuit Court of Appeals clearly recognized that statements related to " 'actual or potential wrongdoing or breach of public trust' " by a public official involve matters of public concern. *Bryson,* 888 F.2d at 1566 (quoting *Morales v. Stierheim,* 848 F.2d 1145, 1149 (11th Cir.1988)).

### 2. Balancing Test

The second part of the four-part analysis requires the court to conduct a balancing test in which it weighs the First Amendment interests of the employee against " 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Bryson,* 888 F.2d at 1565 (quoting *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

[The court] must consider several factors in balancing the State's interest in efficient provision of public services against [plaintiff's] speech interest, including: (1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made.

*Morales,* 848 F.2d at 1149. Further, in determining whether an employee's speech impedes the employer's ability to perform its duties efficiently, the court should also consider the "detrimental impact" the speech has on "close working relationships" and "harmony among coworkers." *Id.*

There is no question that plaintiff's speech disrupted the effective administration of the multijurisdictional drug task force. At the time Captain Greathouse approached plaintiff about the covert investigation being conducted by plaintiff, Greathouse was not aware that the investigation concerned his own activities. Accordingly, Greathouse fully expected that as plaintiff's supervisor, he was entitled to know about any investigations being conducted by members of his department. Plaintiff, however, refused to discuss the investigation with Greathouse. Plaintiff's refusal severely undermined Greathouse's authority as commander of the drug task force and, therefore, impeded the ability of the task force to perform its duties. Further, plaintiff's statements at the meeting with Greene, Kilgore, and Greathouse, protected or otherwise, clearly had a "detrimental impact" on his relationship with his supervisors.

Plaintiff choose to present his allegations concerning Greathouse to persons employed outside the Upson County Sheriff's Department. Although plaintiff did not suspect Sheriff Greene and Chief Deputy Kilgore of being involved in the alleged wiretaps, plaintiff failed to inform either Greene or Kilgore of the allegations and the investigation. The manner, time, place, and context in which plaintiff exercised his right of free speech was poorly selected and contributed significantly to the disruption of the Upson County Sheriff's Department and the drug task force.

Although plaintiff's speech involved a matter of public concern, the manner in which plaintiff presented his allegations, and the resulting impact of those allegations, seriously jeopardized "the State's interest in efficient provision of public services...." *Morales,* 848 F.2d at 1149. The court holds, therefore, that plaintiff's First Amendment interests are outweighed by the interest of

the Upson County Sheriff's Department in providing efficient public services. Accordingly, defendants' motion for summary judgment on plaintiff's First Amendment claim is **GRANTED.** However, so as to provide a complete record, the court will proceed to address the remaining elements of the four-stage analysis.

### 3. Motivation for Adverse Employment Action

The third stage of the *Bryson* analysis requires the fact-finder to determine "whether the employee's speech played a 'substantial part' in the government's decision to ... discharge the employee." *Bryson*, 888 F.2d at 1565. However, before this issue may be submitted to a jury, the court must determine whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Metropolitan Petroleum Co.*, 743 F.Supp. at 823. Defendants have submitted a substantial amount of evidence justifying the decision to terminate plaintiff's employment. The undisputed facts show that plaintiff (1) violated county policy in failing to provide medical certification excusing his extended absence from work, and (2) forged a search warrant. Plaintiff has provided absolutely no evidence indicating that the basis for his termination was for any reason other than those set forth in the April 16, 1993 letter from Chief Deputy Kilgore. Accordingly, plaintiff has failed to show that his speech played a "substantial part" in the decision to terminate his employment.

### 4. Defendants' Burden

Assuming *arguendo* that a jury concluded that plaintiff's speech played a "substantial part" in the decision to terminate his employment, the burden would shift to defendants to prove by a preponderance of the evidence that plaintiff would have been discharged even in the absence of the speech. As discussed above, the record in the case *sub judice* is replete with evidence in support of defendants' decision to terminate plaintiff's employment. Accordingly, had plaintiff's First Amendment claim survived to this stage of the *Bryson* analysis, plaintiff's claim would still fail in that defendants have more than met their burden of establishing that plaintiff would have been discharged even in the absence of the speech at issue.

### III. Due Process

Plaintiff contends that defendants have violated his procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution. "A plaintiff may bring a cause of action under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution alleging that the defendant ... has deprived the plaintiff of a constitutionally protected interest in life, liberty or property." *Jones v. City of East Point*, 795 F.Supp. 408, 414 (N.D.Ga.1992). Plaintiff asserts that defendants deprived him of a constitutionally protected property interest and a constitutionally protected liberty interest.

### A. Property Interest

■ A person may be deprived of a protected property interest only if afforded due process of law. *Jones*, 795 F.Supp. at 414. A procedural due process analysis requires a two-part inquiry: (1) has the plaintiff been deprived of a protected property interest; and (2), if so, was due process accorded. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982); *see also Bailey v. Board of Commissioners*, 956 F.2d 1112, 1122 (11th Cir.1992); *Woodruff v. United States*, 954 F.2d 634, 641 (11th Cir.1992).

"The existence of a legitimate claim of entitlement to a property interest ... is to be determined in accordance with state law." *Nicholson v. Gant*, 816 F.2d 591, 597 (11th Cir.1987); *see also Nolin v. Douglas County*, 903 F.2d 1546, 1553 (11th Cir.1990); *Wofford v. Glynn Brunswick Memorial Hospital*, 864 F.2d 117, 119 (11th Cir.1989). "The acquisition of a Fourteenth Amendment property interest with accompanying procedural due process requires more than a unilateral expectation; there must be a legitimate claim of entitlement." *Adams v. Bainbridge-Decatur County Hospital Authority*, 888 F.2d 1356, 1363 (11th Cir.1989); *see also Nolin*, 903 F.2d at 1553; *Wofford*, 864 F.2d at 119. In general, the existence of a property right

in an aspect of public employment "is made by reference to laws, regulations, or personnel policies." *Nolin,* 903 F.2d at 1553. A plaintiff who asserts that a procedural due process violation has occurred, bears the initial burden of establishing a protected property interest. *Id.* at 1554. The parties do not dispute that plaintiff maintained a property right in his continued employment with the Upson County Sheriff's Department.

If a plaintiff establishes that a protected property interest exists, "the process due in abridging [that] right[ ] is governed by federal law." *Wofford,* 864 F.2d at 118; *see also Harris v. Birmingham Board of Education,* 817 F.2d 1525, 1527 (11th Cir.1987). Therefore, once a property right has been identified, the court must determine whether the plaintiff was afforded due process. *Nicholson,* 816 F.2d at 598. The essential elements of due process are notice and an opportunity to be heard. *Id.* However, "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill advised personnel decisions." *Lee v. Hutson,* 810 F.2d 1030, 1032 (11th Cir.1987). Further, even if "a state procedure is inadequate, no procedural due process right has been violated unless and until the state fails to remedy that inadequacy." *McKinney v. Pate,* 20 F.3d 1550, 1560 (11th Cir.1994). "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney,* 20 F.3d at 1557.

Plaintiff contends that defendants failed to provide a pre-termination hearing in violation of the Due Process Clause of the Fourteenth Amendment. However, as the decision in *McKinney* indicates, "the state may cure a procedural deprivation by providing a later procedural remedy...." *Id.* In the case *sub judice,* plaintiff was afforded two post-termination hearings. Although plaintiff asserts that defendants failed to provide sufficient notice of the May 17, 1993 hearing— thereby preventing plaintiff from attending the hearing—the process and notice afforded plaintiff in regard to the April 12, 1994 hear-

ing more than satisfied the requirements of due process. Further, as the Eleventh Circuit recognized in *McKinney,* the availability of state court remedies is also a factor to be considered when determining whether sufficient process exists to redress a procedural deprivation. *Id.* In fact, as the record in this case indicates, plaintiff is currently challenging the propriety of his termination before the Superior Court of Upson County, *See infra* note 3, and has provided the court no basis for finding that the procedure afforded by that court is inadequate. Although the Eleventh Circuit rejected the idea "that one who suffers a due process violation must first seek relief in state courts," i.e., an exhaustion requirement, *McKinney,* 20 F.3d at 1567 (Hatchett, J., concurring specially), the court did recognize that it was proper to consider the availability of state court remedies in considering whether adequate process existed to remedy an alleged deprivation. *See McKinney,* 20 F.3d at 1564 n. 20. Accordingly, defendants' motion for summary judgment on plaintiff's claim that defendants deprived him of a constitutionally protected property interest, is **GRANTED.**

### B. Liberty Interest

"While damage to reputation, standing alone, does not provide the basis for an action under Section 1983, ... when such damage is sustained in connection with a termination of employment ... it may give rise to a claim for deprivation of liberty actionable under Section 1983." *Campbell v. Pierce County,* 741 F.2d 1342, 1344 (11th Cir.1984); *see also Green v. Brantley,* 895 F.2d 1387, 1392–93 (11th Cir.1990); *Little v. City of North Miami,* 805 F.2d 962, 969 (11th Cir. 1986); *Beckham v. Harris,* 756 F.2d 1032, 1038 (4th Cir.1985). As with a procedural due process claim involving a property interest, a procedural due process claim involving a liberty interest requires a two-part inquiry: (1) has the plaintiff been deprived of a protected liberty interest; and (2), if so, was due process accorded. *See Buxton v. City Plant City,* 871 F.2d 1037, 1041–46 (11th Cir.1989).

To establish the deprivation of a protected liberty interest, a plaintiff must prove: "(1) a false statement (2) of a stigmatizing

nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer...." *Buxton,* 871 F.2d at 1042. Plaintiff contends that in the process of terminating his employment, defendants falsely accused plaintiff of forgery. Plaintiff admits that he participated in the preparation of a false search warrant. However, he denies that his actions constituted the crime of "forgery." The record, including plaintiff's own testimony, clearly indicates that plaintiff prepared a false search warrant and, on the line reserved for the signature of the magistrate, scrawled an illegible signature. These actions amply justify defendants' conclusion that plaintiff "forged a judge's name on a search warrant...." (Greene Dep.Ex. 6.) Plaintiff's argument that his actions did not constitute the *crime* of forgery is irrelevant; plaintiff's actions fell well within the common meaning of the word. Therefore, plaintiff has failed to prove that defendants deprived him of a protected liberty interest. Defendants' motion for summary judgment on plaintiff's claim that defendants deprived him of a constitutionally protected liberty interest, is **GRANTED.**

Assuming that plaintiff had established the existence of a protected liberty interest, the court would have then been called upon to determine whether plaintiff was afforded due process. "[D]ue process requires that the aggrieved individual be afforded a hearing to clear his good name." *Beckham,* 756 F.2d at 1038. However, "[b]ecause [the hearing] is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to his termination or to the publication of related information adverse to his interests." *Campbell,* 741 F.2d at 1345; *see also Buxton,* 871 F.2d at 1046; *Harden v. Adams,* 760 F.2d 1158, 1167 (11th Cir.1985). Further, the only procedure required of a name-clearing hearing is "that the claimant be accorded notice of the charges against him and an opportunity 'to support his allegations by argument however brief,' and, if need be, by proof, however informal." *Campbell,* 741 F.2d at 1345. As discussed above, *see infra* part III(A), plaintiff was provided sufficient post-termination opportunities in which to clear his name. These post-termination procedures more than satisfy the mandate of due process.

### IV. Equal Protection

Plaintiff contends that defendants' decision to discharge plaintiff violated plaintiff's Fourteenth Amendment right to equal protection under the law. Specifically, plaintiff asserts that his "termination was based, in part, on a real or perceived medical disability"—that is, plaintiff's loss of an eye. (Compl. ¶ 57.)

"[A] plaintiff must show a purpose or intent to discriminate in proving an equal protection violation...." *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1478 n. 8 (11th Cir.1991); *see also E & T Realty v. Strickland,* 830 F.2d 1107, 1114 (11th Cir.1987) ("district court should determine whether defendants purposefully discriminated against plaintiffs"). In the case *sub judice,* plaintiff has put forth absolutely no evidence from which a jury could find that defendants intended to discriminate against plaintiff on the basis of his disability. In fact, the record indicates that defendants were not even aware that plaintiff's eye had been removed until after plaintiff had been terminated from his employment. As discussed above, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Metropolitan Petroleum Co.,* 743 F.Supp. at 823. Accordingly, defendants' motion for summary judgment on plaintiff's equal protection claim is **GRANTED.**

### V. Americans with Disabilities Act

Plaintiff asserts that defendants terminated his employment on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The ADA provides: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees...." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination in violation of the ADA, a plaintiff must prove: (1) that he is a qualified individual with a disability; (2) that he has suffered an adverse employment action; and (3) that a causal connection exists between the adverse employment action and the disability. *See Hindman v. GTE Data Servic-*

*es, Inc.*, 1994 WL 371396 (M.D.Fla.). Plaintiff, however, has put forth no evidence from which a jury could find a causal connection between his termination and his disability. Plaintiff has merely made broad, conclusory allegations attacking the motivations of defendants. These unsupported allegations do not create a question of fact for the jury as to the causation element of plaintiff's prima facie case. Accordingly, defendants' motion for summary judgment on plaintiff's ADA claim is **GRANTED.**

## VI. Qualified Immunity

The Eleventh Circuit Court of Appeals has adopted an objective-reasonableness test for determining whether a government official is entitled to qualified immunity. *See Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir. 1991); *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). "The objective-reasonableness test provides qualified immunity protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Courson,* 939 F.2d at 1487. "Eligibility for this immunity is determined on an objective basis and not on the basis of the officer's subjective beliefs." *Acoff v. Abston,* 762 F.2d 1543, 1549 (11th Cir.1985).

■ The objective reasonableness test involves a two-step process. First, the defendant must show that " 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Courson,* 939 F.2d at 1487. If the defendant is able to meet this burden of production, the burden then shifts to the plaintiff to show that the defendant's actions violated clearly established constitutional law. *Id.* The second prong of the test is further divided into two subparts. First, the court must determine if the applicable law was clearly established at the time the action occurred. *Id.* at 1487–88. Second, if the law was clearly established, the court must determine if there is a genuine issue of material fact concerning whether defendant violated this law. *Id.* at 1488. Under this analysis, the defendant is entitled to qualified immunity if either (1) the law was not clearly established, or (2) the law was clearly established but the defendant did not violate the law. *Id.* n. 14.

### A. Scope of Discretionary Authority

■ A government official proves that he acted within the scope of his discretionary authority by showing " 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Id.* at 1487 (quoting *Rich,* 841 F.2d at 1564). The parties do not dispute that defendants Greene, Kilgore, and Greathouse acted within the scope of their discretionary authority in terminating plaintiff's employment.

### B. Clearly Established Law

"The plaintiff has the burden of showing that the defendant violated clearly established constitutional rights." *Busby v. City of Orlando,* 931 F.2d 764, 773 (11th Cir.1991). A plaintiff "cannot persuade the court that the law is clearly established by making general conclusory allegations of a constitutional violation or by stating broad legal truisms.... The court must be convinced of the existence of a clear, factually-defined, well-recognized right of a which a reasonable [person in the defendant's position] should have known." *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1322–23 (11th Cir.1989).

#### 1. First Amendment

The Supreme Court has never established a bright-line standard for determining when the State as an employer may take action adverse to an employee in response to that employee's speech. Instead, the Court has balanced the interest of the employee in commenting on matters of public concern against the interest of the employer in performing public services efficiently. The court must necessarily balance these interests on a case-by-case basis. Because of this case-by-case basis, "[t]here will rarely be a basis for [an] *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights." Because no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordi-

nary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful.

*Dartland,* 866 F.2d at 1323; *see also Busby,* 931 F.2d at 773–74; *McDaniel v. Woodard,* 886 F.2d 311, 314 (11th Cir.1989). However, the "court need not decide the precise result of applying the *Pickering* balancing test. . . . Instead, [the court] need only decide whether such a result would be so evidently in favor of protecting the employee's right to speak that reasonable officials in [defendants' position] 'would necessarily know that the termination . . . under these circumstances violated [plaintiff's] constitutional rights.'" *Busby,* 931 F.2d at 774.

Reviewing the facts in a light most favorable to plaintiff, the court cannot say as a matter of law that the balancing of plaintiff's First Amendment interests against the interests of the public employer would "lead to the inevitable conclusion that the discharge of [plaintiff] was unlawful." *Dartland,* 866 F.2d at 1323. This conclusion, however, does not mean that upon final resolution of the balancing test the court would not find in favor of plaintiff; it means only that plaintiff's First Amendment interests do not "obviously override" the interests of Upson County in providing efficient public services. *McDaniel,* 886 F.2d at 315. Accordingly, "[b]ecause the balance of interests in this case is not so clear," *id.* at 314, defendants' motion for summary judgment on the issue of qualified immunity for plaintiff's First Amendment claim, is **GRANTED.**

*2. Due Process*

Unlike plaintiff's First Amendment claim, the parameters of plaintiff's procedural due process claims are well-defined. It is clearly established that a public employee with a property interest in continued public employment is entitled to a pre-termination hearing. Further, it is clearly established that a false, public statement of a stigmatizing nature attending a governmental employee's discharge constitutes a deprivation of a protected liberty interest. Plaintiff, therefore, has satisfied his initial burden. However, as discussed above, the second prong of the objective reasonableness test is divided into two

subparts. *Courson,* 939 F.2d at 1487. The court has addressed the first subpart of the test—that is, whether the applicable law was clearly established at the time the action occurred. The second subpart requires the court to determine if there is a genuine issue of material fact concerning whether defendants violated this law. *Id.* at 1488. As addressed in Part III of this order, the court has already held that defendants' actions did not violate plaintiff's procedural due process rights. Accordingly, defendants' motion for summary judgment on the issue of qualified immunity as to plaintiff's procedural due process claims, is **GRANTED.**

*3. Equal Protection*

Plaintiff's equal protection claim does not rest on well-established legal principles that have been clearly defined in situations factually similar to that of the case *sub judice. See Dartland,* 866 F.2d at 1322–23. As discussed above, "conclusory allegations of a constitutional violation or . . . broad legal truisms" will not satisfy plaintiff's burden. *Id.* Accordingly, defendants' motion for summary judgment on the issue of qualified immunity as to plaintiff's equal protection claim, is **GRANTED.**

### CONCLUSION

Defendants' motion for summary judgment on plaintiff's claim under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* is **GRANTED.** Defendants' motion for summary judgment on plaintiff's First Amendment claim is **GRANTED.** Defendants' motion for summary judgment on plaintiff's procedural due process claims is **GRANTED.** Defendants' motion for summary judgment on plaintiff's equal protection claim is **GRANTED.** Defendants' motion for summary judgment on plaintiff's claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* is **GRANTED.** Finally, defendants' motion for summary judgment on the issue of qualified immunity is **GRANTED.**

**SO ORDERED.**