**Michael HIRSCHHORN, Plaintiff,**

v.

**SIZZLER RESTAURANTS INTERNATIONAL, INC., Does I Through X, and Roe Corporations I Through X, inclusive, Defendants.**

**No. CV–S–94–628–PMP (RLH).**

United States District Court, D. Nevada.

Dec. 11, 1995.

Leslie Mark Stovall, Michelle Kiraly, Las Vegas, NV, for plaintiff.

Patrick H. Hicks, Neil M. Alexander, Hicks & Walt, a partnership with Littler, Mendelson, Fastiff, Tichy & Mathiason, Reno, NV, for defendant.

## ORDER

PRO, District Judge.

This action arises out of Plaintiff's employment with Defendant. Plaintiff Michael Hirschhorn filed his Amended Complaint (# 1D) in Nevada State Court on June 15, 1994, alleging the following six claims for relief under both state and federal law: (1) Handicap Discrimination; (2) Age Discrimination; (3) Breach of Employment Contract; (4) Infliction of Emotional Distress; (5) Wrongful Termination; and (6) Punitive

Damages. Defendant, Sizzler Restaurants International, Inc. ("Sizzler"), removed the action to this Court on July 13, 1994. (# 1).

Presently before the Court is Sizzler's Motion for Summary Judgment and/or Summary Adjudication of Claims (# 22) filed by Sizzler on August 17, 1995. Hirschhorn filed his Opposition (# 26) on September 5, 1995, and Sizzler filed its Reply (# 27) on September 22, 1995.

## I. Factual Background

Hirschhorn was hired as a Manager Trainee by Sizzler on July 22, 1991. He completed his training in three months and was promoted to Restaurant Manager. As a Restaurant Manager, he reported directly to a Sizzler General Manager, the individual responsible for a particular restaurant location. Hirschhorn continued as a Restaurant Manager with Sizzler until Sizzler terminated him on June 2, 1993.

On April 17, 1992, Hirschhorn injured his back within the normal course and scope of his employment. He sought medical treatment and his injury was diagnosed as a herniated disc at the L4–L5 level. Because of this injury, Hirschhorn requested, and Sizzler granted, a leave of absence from May 14, 1992, to August 14, 1992.

While working in the Sizzler restaurant in Henderson, Hirschhorn again injured his back and neck moving a heavy $CO_2$ tank during a "peak" period on January 1, 1993. Hirschhorn requested and was approved for a second leave of absence from work from February 2, 1993, until April 15, 1993.

Dr. Steven Agata performed surgery upon Plaintiff's back on March 18, 1993. Hirschhorn requested and was granted a discretionary extension to his leave of absence on April 16, 1993. As described in the company's Temporary Leave of Absence Policy and as understood by Plaintiff, Hirschhorn could not return to work without a medical release.

Hirschhorn requested an additional second one-month extension of his second leave of absence on May 14, 1993, due to complications from his surgery. Hirschhorn timely submitted his request to Gary Waffle ("Waffle"), Sizzler's District Manager of the Las Vegas Market, pursuant to the company policy. Hirschhorn spoke to Waffle on May 24, 1993, and they agreed to meet to discuss the request on May 28, 1993.

On May 28, 1993, Hirschhorn informed Waffle that he could not confirm, before the extension to his leave of absence ended, that he would return to work at the end of his requested second extension even if it were granted. Waffle denied Hirschhorn's request for a second extension to his leave of absence and informed Hirschhorn that he would be terminated effective June 2, 1993, if he did not return to work.

The remainder of the conversation between Hirschhorn and Waffle is somewhat disputed. Hirschhorn states that he attempted to discuss his termination with Waffle explaining that he was unaware of his physical limitations and was unable to determine what his physical restrictions would be. Waffle told Plaintiff that the decision to terminate his employment was a final decision. Hirschhorn claims that Waffle then added that he did not understand why Hirschhorn was so upset, because Hirschhorn "got a new back at Sizzler's expense."

While Plaintiff was taking his leave of absences, and during the period of his extensions to his leave of absence, Sizzler held his employment position vacant. However, when Hirschhorn was unable to return to work with a medical release on his scheduled return date, Sizzler terminated his employment.

## II. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870, 883

(9th Cir.1982), *cert. denied,* 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Architectural Bldg. Prods. Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), *reh'g denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Commodity Futures Trading Com. v. Savage,* 611 F.2d 270 (9th Cir.1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979), *reh'g denied,* 441 U.S. 968, 99 S.Ct. 2420, 60 L.Ed.2d 1074 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones,* 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor,* 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group International, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

### III. Age Discrimination Claims

In his Amended Complaint, Hirschhorn alleged that he was discriminated against and passed over for promotions because of his age, forty-nine (49). Sizzler moves for summary judgment on these claims.

In his Opposition (# 26), Hirschhorn concedes that his claims related to age discrimination should be dismissed as there are no factual bases to support them. The Court construes this as a request to withdraw the age discrimination claims. The Court will grant this request and will dismiss Hirschhorn's claims of age discrimination.

### IV. Disability Discrimination Claims

#### A. *Failure to Promote*

Hirschhorn alleges that he was passed over for promotions three times because of his disability. He estimates those dates were (1) May or June, 1992; (2) October,

1992; and (3) December 1992. Sizzler asserts that these claims are time-barred.

■ The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.,* incorporates the enforcement provisions set forth in Title VII. 42 U.S.C. § 12117. Under those provisions, filing a charge with the EEOC within the permissible time period is a jurisdictional prerequisite. *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1475 (9th Cir.1989). Hirschhorn failed to file his administrative charge of discrimination until December 13, 1993. As a result, Hirschhorn now seeks to withdraw his disability discrimination claim based on failure to promote. The Court will grant this request and will dismiss this claim.

### B. Termination

In his Amended Complaint (# 1D), Hirschhorn alleges violations of federal and state laws based on his termination allegedly due to his disability. The ADA, codified at 42 U.S.C. § 12101, *et seq.,* governs Hirschhorn's federal claim. Nevada Revised Statutes Annotated § 613.310, *et seq.,* governs Hirschhorn's state law claim.

■ The Nevada Supreme Court looks to Title VII cases for guidance in the application of Nev.Rev.Stats.Ann. § 613.310, *et seq.,* for unlawful employment practices. *See Apeceche v. White Pine County,* 96 Nev. 723, 615 P.2d 975, 977 (1980). The language of Nev.Rev.Stats.Ann. § 613.310, *et seq.,* is almost identical to the language of the ADA. Since the language of the ADA and the Nevada statutes are almost identical, the statutes grant the Nevada equal rights commission authority to adopt regulations consistent with the provisions of 42 U.S.C. §§ 12101, *et seq.* Because this Court sits in diversity and its function is to predict how the Nevada Supreme Court would rule, *see Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986), *modified,* 810 F.2d 1517 (1987); *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980), this Court will look to federal ADA cases for guidance in the application of the Nevada Statutes. *See also, Apeceche,* 615 P.2d at 977.

■ The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to ... [the] discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a prima facie case of discriminatory discharge in violation of ADA, Hirschhorn must establish that (1) he suffers from a disability; (2) that he is otherwise qualified to perform essential functions of employment, with or without reasonable accommodation; (3) that he has suffered an adverse employment action; and (4) that a causal connection exists between the adverse employment action and the disability. Americans with Disabilities Act of 1990, §§ 2 et seq., 102(a), 42 U.S.C.A. §§ 12101 et seq., 12112(a); *Smith v. Upson County, Ga.,* 859 F.Supp. 1504, 1514 (M.D.Ga.1994), *aff'd,* 56 F.3d 1392 (11th Cir.1995).

■ Sizzler asserts that Hirschhorn's claim of handicap discrimination should fail, because Hirschhorn cannot show that he is a "qualified individual" under the ADA. A "qualified individual with a disability" is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position which that individual holds or desires. 42 U.S.C. § 12111(8); *Bolton v. Scrivner, Inc.,* 36 F.3d 939 (1994). To be protected by the ADA, a person must not only have a "disability," but also must be a "qualified individual." *See Smith,* 859 F.Supp. at 1514.

■ Hirschhorn asserts that his back injury is a physical impairment constituting a disability. Assuming, without so deciding, that his back injury is a disability, Hirschhorn must also be a "qualified individual" to be protected by the ADA. *See Id.*

■ The determination of whether an individual with a disability is "qualified" should be made in two steps. The first step is to determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate employment experience, skills, etc. 29 C.F.R. Pt. 1630, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, § 1630.2(m) Qualified Individual With a Dis-

ability. In the present case, based on Hirschhorn's twenty years of experience in the restaurant industry, there is no dispute that he met the experience requirement.

The second step requires Hirschhorn to demonstrate that he could perform the essential functions of the position with or without reasonable accommodation. *Lucero v. Hart,* 915 F.2d 1367, 1371 (9th Cir.1990). Consideration is given, however, to the employer's judgment as to what functions of a job are essential. 42 U.S.C. § 12111(8). A job function may be considered essential because of the limited number of employees available to perform the function, or among whom the function can be distributed. 29 C.F.R. Pt. 1630, Appendix to part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, § 1630.2(n) Essential Functions.

Sizzler asserts that Hirschhorn could not perform the essential functions of his job. Hirschhorn worked at the Henderson store. The Sizzler provided evidence indicating that at small locations such as Henderson, managers are required to do extensive physical labor because there are fewer employees available for work distribution. Waffle's Deposition, Vol. I, 192:21–25 through 195:1–4. Hirschhorn's Deposition, Vol. I, 134:20–25 through 135:1–8; Vol. II, 265:21–25 through 268:1–4.

Indeed, Hirschhorn testified that during busy times he was constantly required to do numerous different tasks including "bus[ing] tables ... [or] expedit[ing] orders ... [cutting] meat, [or] maybe [stocking] a produce bar. Hirschhorn's Deposition, Vol. II, 265:13–19. Hirschhorn's physical restrictions on bending, stooping, excessive push-pull movements and lifting no greater than 20–25 pounds rendered him a nonqualified individual for his previous manager's position with Defendant because he could no longer perform these physical essential functions of the job. *See* Exhibit 17, attached to Plaintiff's Opposition (# 26). Hirschhorn has failed to rebut Sizzler's assertion that physical labor is an essential function of the position of Restaurant Manager. The Court finds that functions that might not be considered essential if there were a larger staff may become essential because the staff size is small compared to the volume of work that has to be done. *See Treadwell v. Alexander,* 707 F.2d 473 (11th Cir.1983) (holding that it is incumbent on plaintiff to rebut with evidence concerning his individual capabilities and suggestions for possible accommodations and that because an employee might be called upon to do a function only occasionally does not make that job function any less essential).

The Sizzler also asserts that attendance is an essential function of Hirschhorn's job. Sizzler asserts that Hirschhorn's inability to return to work on his scheduled return date at the end of his extension to his leave of absence rendered him nonqualified for his previous employment position. Waffle's Deposition, Vol. I, 118:16–19; 193:1–10; 194:7–25 through 195:1. Hirschhorn's managerial position was held open during his leaves of absence. Waffle's Deposition, Vol. I, 194:16–20. Hirschhorn has failed to produce evidence countering these assertions. The Court will finds that Hirschhorn cannot perform the essential functions of his job without showing he can maintain a regular and reliable level of attendance at that job. *See Wimbley v. Bolger,* 642 F.Supp. 481, 484 (W.D.Tenn.1986), *aff'd,* 831 F.2d 298 (6th Cir. 1987) (court upheld Plaintiff's termination based on unexcused absenteeism because reasonable accommodation does not compel employer to excuse employee's failure to report to work); *Carr v. Reno,* 23 F.3d 525 (D.C.Cir.1994) (holding that "coming to work regularly" is an "essential function"). The Court further finds that Hirschhorn is not a "qualified individual" under the ADA and the Court will dismiss his handicap discrimination claim.

## V. Breach of Contract

Pursuant to Nevada law, the absence of a written employment contract gives rise to the presumption that employment is at-will. *Brooks v. Hilton Casinos, Inc.,* 959 F.2d 757, 759 (9th Cir.1992) (applying Nevada law), *Vancheri v. GNLV Corp.,* 105 Nev. 417, 777 P.2d 366 (1989) (per curiam). An employee may rebut the presumption that his employment is at-will if he proves "by a

preponderance of the evidence that there was an express or implied employment contract between his employer and himself that his employer would fire him only for cause." *Schlang v. Key Airlines, Inc.*, 794 F.Supp. 1493, 1496 (D.Nev.1992), (citing, *American Bank Stationery v. Farmer*, 106 Nev. 698, 799 P.2d 1100 (1990)) (applying Nevada law). In the instant case, Hirschhorn did not have a written employment contract. Hirschhorn relies on alleged verbal statements made during his interview and shortly after he was hired as evidence of an implied or express employment contract that he would terminated only for just cause.

 Hirschhorn alleges that Sizzler said "as long as [Hirschhorn's] performance is there, [he] had a job as long as [he] wanted one" and that "[Hirschhorn] had a home as long as [he] wanted one." In a recent Nevada Supreme Court case, the Court held that an employee's uncorroborated self-serving allegations relating to promises of "lifetime employment" are insufficient to overcome the at-will presumption. *Yeager v. Harrah's Club, Inc.*, 111 Nev. 830, 897 P.2d 1093 (1995). Such general expressions of long-term employment do not convert an at-will employment relationship into an employment agreement requiring just cause for termination. *Brooks v. Hilton Casinos, Inc.*, 959 F.2d at 760, (citing *Vancheri v. GNLV Corp.*, 777 P.2d at 369 (Nev.1989).

The Nevada Supreme Court has rejected claims of contractual employment based on very similar evidence. *Brooks*, 959 F.2d at 760. In *Brooks*, the plaintiffs were not employed under written contracts, but were assured by Hilton's management that they were part of the "Hilton family" and would have their jobs as long as they performed them satisfactorily. *Id.* Like the plaintiffs in *Brooks*, Hirschhorn has only offered evidence of his unilateral expectation and his subjective belief that he would be terminated only for just cause. Accordingly, Hirschhorn has not proffered enough evidence to overcome the presumption that his employment was at-will the Court will dismiss his breach of contract claim.

## VI. Infliction of Emotional Distress

 To state a cause of action for intentional infliction of emotional distress in Nevada, a plaintiff must allege (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intentionally or recklessly caused the emotional distress; (3) the plaintiff actually suffers severe or extreme emotional distress; and (4) the defendant's conduct actually or proximately caused the plaintiff's suffering. *Star v. Rabello*, 97 Nev. 124, 625 P.2d 90, 92 (1981); *Nelson v. City of Las Vegas*, 99 Nev. 548, 665 P.2d 1141, 1145 (1983); *see also Posadas v. City of Reno*, 109 Nev. 448, 851 P.2d 438, 444 (1993).

 Because Hirschhorn was an at-will employee, Sizzler was entitled to terminate him without cause. *See Brooks v. Hilton Casinos, Inc.*, 959 F.2d 757, 765 (9th Cir. 1992). Hence, the discharge did not amount to the type of willful misconduct that could serve as a predicate for the tort of intentional infliction of emotional distress.[1] *Brooks v. Hilton Casinos, Inc.*, 959 F.2d at 766 (citing *Alford v. Harolds Club*, 99 Nev. 670, 669 P.2d 721, 724 (1983) (per curiam)). Hirschhorn's testimony that Sizzler's failure to inform Hirschhorn he would not receive a second extension to his leave of absence and would be terminated if he could not return to his job on the scheduled return date at the end of his first leave of absence is insufficient evidence of Sizzler's alleged extreme and outrageous conduct. *See Alam v. Reno Hilton Corp.*, 819 F.Supp. 905, 911 (D.Nev.1993);

---

1. The Nevada Supreme Court does not read *Brooks* as prohibiting every claim for intentional infliction of emotional distress. In *Shoen v. Amerco, Inc.*, 111 Nev. 735, 896 P.2d 469 (1995), the Nevada Supreme Court reversed the lower court's grant of summary judgment on the intentional infliction of emotional distress claim. The plaintiff in that case, in addition to establishing that he was terminated, also established that the employer discontinued the plaintiff's retirement compensation solely to harass the plaintiff, prolong litigation solely to harass the plaintiff, and threatened the plaintiff for testifying against officers of the employer corporation in an IRS proceeding. *Shoen*, 896 P.2d at 477. It is clear from *Shoen* that a plaintiff must show more than just termination to establish extreme and outrageous conduct to sustain a claim for infliction of emotional distress.

Hirschhorn's Deposition, Vol. II, 228:10–18; 232:7–8; 234:16–22.

Furthermore, the "termination of employees, even in the context of a discriminatory [employee] policy, does not in itself amount to extreme and outrageous conduct actionable under an intentional infliction of emotional distress theory. Liability is only found in extreme cases where the actions of the defendant go beyond all possible bounds of decency, is atrocious and utterly intolerable." *Alam*, 819 F.Supp. 905, 911 (D.Nev. 1993); *Brooks v. Hilton Casinos, Inc.*, 959 F.2d at 766 (holding that even if the plaintiff managed to establish that the termination were wrongful, Nevada does not recognize a cause of action for intentional infliction of emotional distress in the employment termination context). As long as an employer does not violate state public policy, the employer may terminate an employee with or without cause and with or without notice. *Schlang v. Key Airlines*, 794 F.Supp. at 1496. In the instant case, there is no evidence that the Sizzler's termination of Hirschhorn, in itself, was "extreme and outrageous." *Alam*, 819 F.Supp. at 911.

Hirschhorn argues that the claim for infliction of emotional distress was not based solely on his termination but rather on the circumstance upon which his termination occurred. Hirschhorn argues that comments made by Sizzler's agent, Mr. Waffle, that "I don't know why [you] are so upset, because [you] got a new back at Sizzler's expense" gave rise to the cause of action for infliction of emotional distress. Hirschhorn's Affidavit, 6:18–20; Waffle Deposition, Vol. I, 84:22–25.

Whether the evidence of Hirschhorn's distress is sufficient (i.e. "severe") to allow the claim to advance to the trier of fact and whether defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery are questions for the Court to answer. *Alam*, 819 F.Supp. 905, 911 (D.Nev.1993) (applying Nevada law). Viewing the evidence in the light most favorable to Hirschhorn, the Court cannot find that the comment made by Waffle was so extreme and so outrageous as to warrant a claim for infliction of emotional distress. *See, e.g., Alam*, 819 F.Supp. at 911.

A plaintiff must suffer severe emotional distress. *Alam*, 819 F.Supp. 905, 911 (D.Nev.1993). In other words, the stress must be so severe and of such intensity that no reasonable person could be expected to endure it. *Id.* (citing *Nelson v. City of Las Vegas*, 99 Nev. 548, 665 P.2d 1141, 1145 (1983)). Moreover, the less extreme the outrage (as in this case) the more appropriate it is to require evidence of physical injury or illness from emotional distress. *Id.* The deposition testimony in this matter not only relates Hirschhorn's mental anguish, stress, anxiety and sense of worthlessness but also states that the he could not identify any physical injury caused by the alleged extreme and outrageous conduct engaged in by Sizzler. *See* Deposition of Hirschhorn, Vol. II, 250:14–24. Although sympathetic to any discomfort suffered by Hirschhorn from having to find a new job and from being terminated, this Court cannot find that such agitation amounts to severe emotional distress to sustain the claim for infliction of emotional distress. *Alam*, 819 F.Supp. at 911 (Plaintiffs' feelings of inferiority, headaches, irritability, and loss of ten pounds were insufficient to amount to severe emotional distress).

Viewing the evidence submitted in the light most favorable to Hirschhorn, this Court finds neither the distress suffered by Hirschhorn nor the conduct of Sizzler sufficient to sustain the claim of intentional infliction of emotional distress. Therefore, Sizzler's Motion must be granted as to this claim.

## VII. Wrongful Termination

The Nevada Supreme Court has clearly established that an at-will employee may be discharged for any reason at the will of an employer. *Canada v. Boyd Group, Inc.*, 809 F.Supp. 771 (D.Nev.1992) (citing *K–Mart Corp. v. Ponsock*, 103 Nev. 39, 42 n. 1, 732 P.2d 1364 (1987)). The court has also held that despite an employee's status as "at-will", "[a]n employer commits a tortious discharge by terminating an employer for reasons which violate public policy." *Canada v. Boyd Group, Inc.*, 809 F.Supp. 771 (D.Nev.

1992) (citing *D'Angelo v. Gardner*, 107 Nev. 704, 819 P.2d 206, 212 (1991)). The court explained that "[t]he essence of the tortious discharge is the wrongful, usually retaliatory, interruption of employment." *Id.*

However, Nevada courts have specifically elected not to recognize a common law claim for wrongful termination in violation of public policy when there are sufficient statutory remedies redressing the wrong. *D'Angelo v. Gardner*, 107 Nev. 704, 720 n. 10, 819 P.2d 206 (1991); *Canada v. Boyd Group, Inc.*, 809 F.Supp. 771, 782 (D.Nev.1992). Sizzler argues in the instant case that since Hirschhorn is relying upon the same facts which allegedly support his statutory age and disability claims to support his wrongful termination claim, there are sufficient statutory remedies available to redress Sizzler's alleged unlawful conduct.

The Sizzler has mischaracterized Hirschhorn's claim. Hirschhorn alleges that he was retaliatorily terminated because he filed a worker's compensation claim. The Nevada Supreme Court has chosen to support this established public policy by holding that the retaliatory discharge of an employee which stems from that employee filing a worker's compensation claim is actionable in tort. *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394, 396 (1984). This is an exception to the narrow at-will employment rule in this state. *Hansen*, 675 P.2d at 397.

Sizzler has failed to sustain its burden in showing an absence of a general issue of material fact on this claim. Accordingly, the Court will deny summary judgment as to this claim.

## VIII. Punitive Damages

■ Defendant moves for summary judgment on punitive damages. The Court finds that Sizzler has not met its burden of establishing the absence of a genuine issue of material fact with regard to the wrongful termination claim. Punitive damages may be appropriate in cases where former employees can demonstrate malicious, oppressive or fraudulent conduct on part of their employers. *see Hansen*, 675 P.2d 394 (holding that as with any intentional tort, punitive damages are appropriate in actions for retaliato-

ry discharge by employer stemming from filing of workmen's compensation claim by injured employee where employee can demonstrate malicious, oppressive or fraudulent conduct on part of employer in accordance with statutory provision). Accordingly, the Court will not grant summary judgment on the issue of punitive damages as to Hirschhorn's remaining claim of wrongful termination.

IT IS THEREFORE ORDERED THAT Defendant Sizzler Restaurants International, Inc.'s, Motion for Summary Judgment and/or Summary Adjudication of Claims (# 22) is DENIED in part to the extent that it seeks the dismissal of Hirschhorn's claim of wrongful termination based on retaliatory discharge and on the issue of punitive damages.

IT IS FURTHER ORDERED that Sizzler's Motion for Summary Judgment is GRANTED in all other respects to the extent that it seeks dismissal of Plaintiff's claims for Handicap Discrimination, Age Discrimination, Breach of Employment Contract, and Infliction of Emotional Distress.