Jean **PUCKETT**, Plaintiff,

v.

**PORSCHE CARS OF NORTH AMERICA, INC.,**
Defendant.

No. CV–N–95–690–DWH(RAM).

United States District Court,
D. Nevada.

Aug. 27, 1997.

---

Marialice K. Galt, William R. Kendall, Reno, NV, for Plaintiff.

Patrick H. Hicks, Carol A. Cooke, Reno, NV, for Defendant.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HAGEN, District Judge.

Before the court is Magistrate Judge Robert S. McQuaid's report and recommendation(#39) that defendant's motion(#26) for summary judgment be granted. No objection has been filed and time has expired for the filing of any 28 U.S.C. § 636(b)(1)(C). The court agrees with Judge McQuaid's report and recommendation and accepts and adopts it in whole as the judgment of the court.

**IT IS THEREFORE ORDERED** that defendant's motion (#26) for summary judgment is *GRANTED*. The Clerk shall enter judgment accordingly.

### REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

McQuaid, United States Magistrate Judge.

This matter has been referred to the undersigned Magistrate Judge by the Honorable David W. Hagen, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and LR 1B 1–4. The matter is before the court on Defendant Porsche Cars of North America's Motion for Summary Judgment (Doc. # 26). Plaintiff Puckett has filed a response (Doc. # 29) and a Statement of Disputed Material Facts in Opposition (Doc. # 30), to which Porsche has filed a reply (Doc. # 32). The court heard oral argument on the motion on April 28, 1997.

### I. BACKGROUND

Plaintiff Jean Puckett ("Puckett") began her employment with Defendant Porsche Cars of North America, Inc. ("Porsche") on or around April 22, 1991, first as a senior

clerk-typist and later as "parts administrative specialist." Over the course of her employment she developed carpal tunnel syndrome [1] which made it extremely painful for her to type for extended periods of time. Eventually on June 22, 1993 Puckett was taken off work by her physician, and remained off work until December 31, 1993, when she was terminated pursuant to Porsche's policy of allowing a maximum of six months medical leave. *See* Plaintiff's Resp. to Mot. Summ. J. Exhibit G (Doc. # 29).

Previous to her taking leave, in the spring of 1993, Puckett claims that she discussed the idea of having another employee perform a part of her work, data entry on a ten-key pad which took approximately one-half of an hour to one hour, with her supervisor Jim deprosse ("deProsse"). This was apparently done for three to four weeks before the employee, Cathy Lignowski, refused to continue doing the data entry. Puckett reported Lignowski's refusal to deprosse who stated that he could do nothing because he was not Lignowski's supervisor. Puckett also claims that she and deProsse rewrote Puckett's and Lignowski's job descriptions so that Lignowski would be assigned the data entry task on a full time basis. DeProsse has no recollection of such action, and Porsche has submitted several affidavits of employees who assert first that no such description was found in the Porsche computer system, and second that the person in charge of personnel never received the changes. Declaration of Nate Estes and Declaration of Linda Barrenchea, Def.'s Mot. Summ. J. Exh.'s # 15 and # 2, respectively (Doc. # 26).

Puckett sought treatment in May of 1993. Her physician restricted her typing to two hours or less per day, a condition with which Porsche complied. Additionally, deprosse installed a "variable height keyboard" in an effort to ease Puckett's difficulties. Even with the adjustable keyboard Puckett's condition failed to improve, and on June 23, 1993, she was taken "off work" and referred to another doctor, Dr. Christensen, for further treatment.

In July of 1993, Puckett filed her initial claim with the Nevada State Industrial Insurance Commission ("SIIS") which was subsequently accepted. Def.'s Mot. Summ. J. Exh.'s # 3 and # 13 (Doc. # 26). On July 21, Dr. Christensen made his initial evaluation of Puckett and kept her "[o]ff work until further notice." Plaintiff's Resp. Exhibit E, p. 21–22 (Doc. # 29). Pursuant to Dr. Christensen's orders, Puckett remained off work until March 7, 1994, when Christensen released her to work in a "light to medium capacity. She may work as a secretary. I want to limit her for the time being to two hours a day of typing or computer work. Hopefully with time that will increase." *Id.* at p. 12–13.

During her absence, deprosse stated that Puckett's work was split between a temporary employee and other employees of Porsche, all with an eye toward her eventual return. Depo. of Jim deprosse 83:4–13, Exh. B, Plaintiff's St. of Disputed Fact (Doc. # 30). Also during the period of June 28, 1993 until February 23, 1994, Puckett received compensation checks from SIIS. Porsche's Mot. Exh. # 16 (Doc. # 26). Before receiving the checks however, Puckett filled out a form on which she indicated, by checking the appropriate boxes, that she had not been released to "any type of work by a physician or chiropractor," that she had been "continuously disabled and unable to work in any occupation for the past 14 days," and that she was unable to work presently at "a light duty type job." *Id.* On August 18, 1993, Puckett filled out a form entitled "30 DAY CONTINUING REPORT OF DISABILITY" on which she indicated, again by checking off the appropriate boxes, that she was presently totally unable to perform the duties of her occupation, and that she was totally unable to perform the duties of another occupation. Porsche's Mot. Exh. # 17 (Doc. # 26). Dr. Christensen also checked off similar boxes on the same form and signed it on September 20 or 30 of 1993. *Id.* This form

---

**1.** She had several other ailments which affected her wrists and arms including tenosynovitis, and reflex sympathetic dystrophy. *See* Def.'s Mot. For Summ. J. Exh. # 5 p. 1–2 (Doc. # 26). For ease of reference these will all be referred to as "carpal tunnel syndrome."

was allegedly the basis for a check issued to Puckett by the Heritage Life Insurance Co. *Id.*

Sometime in February or March of 1994, a replacement for Puckett was hired. Depo. of Jim deprosse at 101: 21–25, 81:8–25, 82:1–18, Def.'s Mot. Summ. J. Exh. # 1 (Doc. # 26). Porsche had terminated Puckett's employment on December 31, 1993. Plaintiff's Resp. Exhibit G (Doc. # 29). On June 13, 1994, Porsche, apparently after having received notification from SIIS that Puckett had been released to work, informed Puckett that Porsche currently had no positions available which matched Puckett's restrictions. *Id.* at Exhibit F.

Puckett's Complaint states that she filed a charge of employment discrimination with the Equal Employment Opportunity Commission on July 15, 1994; that she was issued a "right to sue" letter on August 11, 1995, and that she received the letter on August 14, 1995. Puckett then filed this action on November 13, 1995, alleging claims of discrimination under the Americans with Disabilities Act 42 U.S.C. § 12101–12117, and Chapter § 613 of the Nevada Revised Statutes. Plaintiff's Complaint (Doc. # 1).

## II. *DISCUSSION*

To succeed on its motion, Porsche must show that there are no genuine issues of material fact, and that Porsche is entitled to judgment as a matter of law. See Fed. R.Civ.P. 56(c) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Porsche has the initial burden of showing the lack of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. Once met, the burden shifts to Puckett who must establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The court will view the evidence in the light most favorable to Puckett; however, to meet her burden, she must set forth specific facts demonstrating a genuine issue for trial. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970),*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). She may not rest upon the mere allegations or denials of [the] pleadings. Fed.R.Civ.P. 56(e). Finally, to survive the motion for summary judgment, Puckett must produce evidence upon which a reasonable jury could find for her. *Anderson,* 477 U.S. at 248–9, 106 S.Ct. at 2510–11.

■ To prevail on her employment termination claim under the ADA, Puckett must establish (1) that she was a disabled person within the meaning of the ADA; (2) that she is qualified, i.e., that is, with or without reasonable accommodation (which she must describe), she is able to perform the essential functions of the job; (3) that Porsche terminated her because of her disability. *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir.1996). The language of N.R.S. § 613.310, the corresponding Nevada statute, is almost identical to the language of the ADA; the court will therefore look to federal cases for guidance in applying the Nevada statutes. See Hirschhorn v. Sizzler Restaurants International, Inc., 913 F.Supp. 1393, 1398 (D.Nev.1995) (*citing Apeceche v. White Pine County,* 96 Nev. 723, 615 P.2d 975, 977 (1980)). Accordingly both the ADA and state law claims will be analyzed together.

### A. Was Puckett a Qualified Individual With a Disability?

■ The primary issue raised by Porsche is whether Puckett is a "qualified individual" within the meaning of the statute. This determination is made at the time of the employment decision. 29 C.F.R. Pt. 1630, Appendix to Part 1630–Interpretive Guidance to Title I of the ADA, § 1630.2(m) (1994). A two step process is employed to determine if someone is a "qualified individual." The initial question is whether the individual satisfies the prerequisites for the position, i.e., whether the person possesses the necessary skill, knowledge, and experience required for the job. *Hirschhorn v. Sizzler Restaurants International, Inc.,* 913 F.Supp. 1393, 1398 (D.Nev.1995). There appears to be no dispute that Puckett did possess the necessary prerequisites for her position, and the court therefore finds that this prong is fulfilled. The next step is to determine whether the plaintiff could perform the essential functions

of the position with or without reasonable accommodation. Id. at 1399 (citation omitted). Puckett bears the burden of demonstrating such ability, *Kennedy,* 90 F.3d at 1481, and, as stated, the Plaintiff must describe the accommodation asserted to be reasonable. *Id.*

### 1. Puckett's Termination and Total Disability

■ The first issue raised by Porsche is whether or not, at the time she was discharged, Puckett was totally disabled. Porsche argues that from the time she was first taken off work in June of 1993, until March of 1994, Puckett and her doctor represented that Puckett was totally disabled; thus there was no accommodation which Porsche could have made and by definition she would not be a "qualified individual."

For support, Porsche cites to *Kennedy v. Applause, Inc.,* 90 F.3d 1477 (9th Cir.1996). In *Kennedy,* the plaintiff's doctor had declared her totally disabled, and Kennedy had herself made sworn statements on state disability forms and the Social Security Administration ("SSA") to the effect that she was totally disabled for all work related purposes. *Id.* at 1480. In the district court, however, her deposition testimony was that she had been able to perform her job. *Id.* In affirming the district court's grant of summary judgment based on the plaintiff's claims of total disability, the Ninth Circuit first restated the district court's holding that Kennedy's deposition testimony was "belied by her detailed and definite sworn statements to the contrary on her disability claim forms." Id. The circuit court then found that her sworn statements on both state disability and Social Security Administration benefit forms corroborated her doctor's assessment of total disability and directly contradicted her later deposition testimony. *Id.* at 1481. The court then ruled that because her deposition testimony "flatly contradicted" her prior sworn statements and the medical evidence, that her deposition testimony "does not present a sufficient disagreement to require submission to a jury.'" *Id.* at 1481 (citing *Anderson v. Liberty Lobby,* 477 U.S. 242,

251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)).

At her deposition, Puckett stated that the only part of her job she could not perform was the data entry on the 10 key pad. Depo. of Jean Puckett, 117:3–25, 118:1–16, Def.'s Mot. Summ J. Exh. #7 (Doc. #26). Porsche argues that this was the first time Puckett had made this assertion, and argues that Puckett should not be allowed to contradict her previous statements on SIIS and insurance forms that she was actually totally disabled.

■ "The general rule in the Ninth Circuit is that a party cannot establish the existence of a genuine issue of material fact by submitting deposition or affidavit testimony contradicting his or her former sworn statements." *Baker v. Asarco, Inc.,* 1995 WL 795663, *4 (citing as examples *Radobenko v. Automated Equipment Corp.,* 520 F.2d 540, 544 (9th Cir.1975), *Lopez v. General Motors Corp.,* 697 F.2d 1328, 1333 (9th Cir.1983), and *Kennedy v. Allied Mutual Insurance Co.,* 952 F.2d 262, 266–67 (9th Cir.1991)); See also Kennedy, 90 F.3d at 1481 (noting that plaintiff's deposition testimony which "flatly contradicted" her previous sworn statements and the medical evidence did not "present 'a sufficient disagreement to require submission to a jury.'") (citation omitted). In *UA Local 343 v. Nor–Cal Plumbing,* 48 F.3d 1465 (9th Cir.1994), cited by the *Asarco* court, the Ninth Circuit refused to allow a businessman to create a question of fact by denying that he operated a company when he had made sworn statements on a business license that he would "supervise and control" the plumber employees of that same company. The Ninth Circuit stated that "internal inconsistencies in a party's own testimony fail to create a genuine issue of material fact." Id. at 1473.

Before beginning its inquiry into the content of the forms submitted by Porsche to show that Puckett was totally disabled, the court notes that it should not blindly accept the statements made on the forms which Porsche presents as evidence. The court will examine the content of the statements for detail. The Kennedy court noted that Kennedy had provided "detailed and definite

sworn statements to the contrary on her disability claim forms." *Id.* at 1480 (emphasis added). Similarly, the court in *Norris v. Allied–Sysco Food Services, Inc.*, 948 F.Supp. 1418 (N.D.Cal.1996), found significant, at least in part, the lack of detail on the forms the plaintiff had filled out, stating,

> [w]here an employee is merely responding to questions on disability applications, often only checking little boxes or filling in blanks which have little room, the employee may not have a fair opportunity to accurately explain the details of the employee's medical condition and ability or inability to work

*Id* at 1447.

Part of the court's analysis then, will involve an examination of whether Puckett's representations on the documents before the court are sufficiently detailed and definite to allow the court to find that Puckett was totally disabled and that she should not be allowed to create an issue of fact with her later deposition testimony to the contrary. Additionally, as in Kennedy, the court will look to the available medical evidence to see whether it confirms or contradicts Puckett's statements.

The forms which Porsche claims show Puckett's total disability are various SIIS forms and a form sent to an insurance company. A potential problem is that the forms merely provide boxes which the claimant can "check off," and provide little if any room for personal information or detail. As will become clear however, the lack of detail on the forms is countered by Puckett's doctors' diagnoses, as well as her statements to those doctors.

### a. Puckett's Statements

The first form put forth by Porsche is found at Exhibit # 3 to Porsche's Motion (Doc. # 26), and is alleged to be Puckett's initial worker's compensation claim filed with SIIS dated 7–21–93. After indicating the cause of her injury, "typing and entering data on the computer," Puckett then states in the appropriate box that the accident could

have been prevented by "keyboard at a proper height and angle." In the area marked "Degree of disability" Puckett checked off the box labeled "unable to work"; her only other choice was "No lost time." In the area filled in by her physician, Dr. Christensen, he checked off a box indicating that he had advised Puckett to remain off work for five days or more.

Contained within Porsche's Exhibit # 16 (Doc. # 26) are a chronological series of SIIS forms entitled "Claimant's Request for Compensation." The significant items here are three questions, each of which requires a "yes" or "no" response indicated by checking the appropriate box. The questions and Puckett's answers are as follows:

> 8. Have you been released to return to *any type* of work by a physician or chiropractor?
>
> Answer–No.
>
> 10. Have you been continuously disabled and unable to work in any occupation for the past 14 days?
>
> Answer–Yes.
>
> 12. Would you be able to work at a light duty type job now?
>
> Answer–No.

*Id.* (All emphasis in original).

The form then recites the fact that it is a violation of law to deliberately report false information, and above Puckett's signature is the sentence, "I understand that the reporting of false information may disqualify me from receiving worker's compensation benefits, and may subject me to criminal and civil penalties. I certify under penalty of perjury that the above information is correct to the best of my knowledge." Id. These same answers are given on 18 identical forms dated from June of 1993 until February of 1994.

The final piece of documentary evidence put forth by Porsche to indicate Puckett's total disability is apparently an insurance document signed by Puckett on August 8, 1993, and by Dr. Christensen on either September 20 or 30,[2] and is entitled "30 Day Continuing Report of Disability." *Id.* at Ex-

**2.** Dr. Christensen's handwriting is unclear and the number indicating the date could be either 20 or 30.

hibit # 17. Both Puckett and Dr. Christensen marked an "X" in the boxes indicating that Puckett was totally unable to perform her duties and was totally unable to perform the duties of another occupation as well. Additionally, in the physician's portion of the document, Dr. Christensen indicated that Puckett was "off work very limited use of hand post-op recovery," and that Puckett's estimated length of further disability was from 7/21/93 through "approx. 10/25/93." Also within Defendant's Exhibit # 17 is a check issued by an insurance company indicating under the heading "Explanation of Payment" that it covered the period from 6/23/93 through 7/22/93 and equalled 30 days disabled. *Id.*

As stated the biggest potential problem with these documents is that they are not particularly detailed; they are almost all phrased in simple "yes" or "no" language. On all three forms, Puckett indicated that she was unable to work, and on two of those forms she indicated that she was unable to work at any other occupation as well. Finally, she indicated that she could not even have performed light duty work.

Were this the only evidence before the court, there would possibly be an issue of fact remaining as to whether the questions answered implied only that she could not perform in any occupation, *without reasonable accommodation. See Norris*, 948 F.Supp. at 1445 ("[w]e also think that the fact that Norris eventually received disability benefits under the 'total disabillity' section of her insurance policy is not necessarily inconsistent with the possibility that she could have been able to perform her job *with reasonable accommodation*") (emphasis added). However there are other reasons to believe that Puckett was disabled: in addition to the documentary evidence above, both Porsche and Puckett have submitted various medical records which indicate that she was totally disabled, Puckett made statements to her doctors which indicate that she was totally disabled, and Puckett's own deposition as well as her doctors' depositions confirm this fact.

### b. Puckett's Medical Records

The first doctor to examine Puckett appears to have been Dr. Vivian Lee. Dr. Lee's notes as well as those of several physical therapists are found in Porsche's Motion at Exhibit # 4 (Doc. # 26). Besides reciting the treatments given to Puckett over the course of several weeks leading up to her off work status, these notes indicate that on June 14, 1993, Puckett told either Lee or a physical therapist that her right arm was sore from balancing her checkbook the day before. *Id.* at 01923. On June 17, 1993, the physical therapist indicated that Puckett stated she could not do any chores such as washing dishes or writing without pain. *Id* at 01922. Finally, on June 22, 1993, Puckett indicated that "if she cleans off a counter at home, works at the computer 2 hours a day at work, or does any repetitive motion, it 'just kills me.'" *Id.* at 01921. These statements should constitute admissible evidence under FRE 803(4) "Statements for purposes of medical diagnosis or treatment." These statements are confirmed by Puckett's deposition testimony that while Puckett did not remember making the statement that two hours of computer work "just kills me," she agreed that Dr. Lee's notes would be a fair representation of what she told Lee and that, at that time, the pain was unmanageable even with the two hour restriction on typing:

Q: Okay. I'm referring now to another progress note from Dr. Lee, Health Plex, where she indicated that you told her that working at the computer two hours a day just—it "just kills me."

Do you recall telling her that?

A: I don't recall that, no.

Q: You don't have any reason to disbelieve that you told her that if that's in her notes, correct?

A: Oh, no, no.

Q: Her notes would be a fair representation of what you probably told her then?

A: I would say so.

Q: All right. So even on restricted duty with the two hours of keyboarding, the pain was unmanageable?

A: At that point.

Depo. of Jean Puckett 69:10–24, Def.'s Mot. Summ. J. Exh. # 7 (Doc. # 26).

Puckett's next physician was Dr. Christensen, whose notes are found in both Exhibit # 5 to Porsche's Motion (Doc. # 26) and Exhibit E to Puckett's Response (Doc. # 29), and will be referred to by date for ease of reference. Christensen's notes appear to indicate that Puckett was in fact totally disabled at the time she was terminated. His notes reveal that after Puckett was taken off work in June of 1993 by Dr. Lee, her expected return date was uncertain until March of 1994, a full three months after Porsche terminated Puckett's employment. His notes, summarized in pertinent part are as follows:

July 21, 1993–Puckett remains "off work until further notice."

August 18–Puckett is off work pending surgery for a right carpal tunnel release.

September 27–following her operation, Puckett is expected to return to work in three to four weeks, unless Christensen decides to operate on the left wrist as well (which he does).

October 18–"She is unable to return to work at this time as a secretary. She does primarily typing and highly repetitive activities."

November 9–Puckett cancels appointment.

December 7–Surgery on her left wrist. "I do not think she will be able to go back to []"

December 14–"Hopefully she can do some light work when I see her back in 3–4 weeks."

January 4, 1994–Office visit, will see Puckett in two weeks.

January 24–"Patient is still off work. She normally works as a secretary but has been 'terminated in her place of employment and is not ready to go back to the job force at this time.'"

February 14–"I will see her in three weeks and I anticipate letting her do light work at that time."

March 7, 1994–"I am going to release her to go back to work in a light duty capacity. She can work in a light to medium capacity. She may work as a secretary. I want to limit her for the time being to two hours a day of typing or computer work."

Plaintiff's Resp. To Mot. Summ. J. Exhibit E (Doc. # 29).

At no point in Dr. Christensen's notes is there an indication that he considered Puckett able to work at her job or any other with some accommodation. In fact, Dr. Christensen's notes concerning Puckett clearly indicate that as late as December 14, 1993 Puckett's status was uncertain. His notes also confirm that when Puckett was terminated by Porsche, Puckett was totally disabled, unable to work in any capacity as a secretary, and remained that way until March 7, 1994, when he finally allowed her to go back to work in a "light to medium capacity." That this was the case is confirmed by Puckett's statements under penalty of perjury on the SIIS forms that she was continuously disabled and unable to work in any occupation, including light duty. See Def.'s Mot. Summ. J. Exhibit # 16 (Doc. # 26).

Finally, neither Dr. Lee nor Dr. Christensen nor any other person who attended to Puckett ever indicated that she could perform at least some of her job duties. Nor did they indicate that Puckett had told them that she could perform all of her job requirements except for data entry. See Depo. of Vivian Lee pp.'s 21–24, Porsche's Mot. Exh. # 12, and her notes at Exh. # 4; Depo. of Christensen pp.'s 21–22, *Id.* at Exh. # 14, and his notes at Exh. # 5 and Pl.'s Resp. at Exh. E (Doc. # 29).

While her statements on the SIIS forms were not overly detailed, the facts contained therein are confirmed by Puckett's own doctors who kept her out of work for nine months. Porsche has met its burden of showing that Puckett was totally disabled. Puckett must now come forward with evidence demonstrating that there is a triable issue of fact. Anderson, 477 U.S. at 256–57, 106 S.Ct. at 2514. At this point, the facts indicate that Puckett was totally disabled at the time she was discharged and therefore could not have been a "qualified individual" within the meaning of the ADA statute, and Puckett's statements at her deposition three years later contradicting her sworn state-

ments of inability to do any work should be disregarded.

## 2. Puckett's Arguments

Puckett fails to address the issue of total disability, and instead argues that she was a qualified individual based on her allegations that the data entry was not an essential function of the job, that even if it was an essential function Porsche failed to attempt to reasonably accommodate her, that Porsche improperly relied on the worker's compensation system and Puckett's doctors as the basis for its determinations concerning her ability to work at Porsche, and finally that Porsche never attempted to place her elsewhere in the company.

Puckett's arguments that there are material issues of fact remaining because Porsche never determined the essential functions of Puckett's position, or that Porsche never investigated the possibility of reasonable accommodations, "misses the mark." *Kennedy,* 90 F.3d at 1480. The evidence shows that, as the district court and the Ninth Circuit found in Kennedy, "she was totally disabled and as a result was unable to perform the job no matter what its essential functions were." *Id.*

At oral argument, counsel argued that *Kennedy* could be distinguished on its facts, by arguing that *the reason Puckett became totally disabled was because of Porsche's alleged indifference and inaction* in light of her carpal tunnel syndrome. This argument is factually incorrect. The facts show that when Puckett first went to see a doctor, deprosse procured and installed an adjustable keyboard at the doctor's and Puckett's request, and limited her typing to less than two hours per day, also per doctor's orders. Even with these measures in place Puckett's condition continued to worsen until she was ultimately forced to take nine months off of work to recover.

This brings to light Puckett's next contention that Porsche improperly relied on the evaluations of Puckett's doctors and the SIIS system generally in its failure to accommodate her. Puckett's sole source of authority for this proposition is the "EEOC Guidance on Workers' Compensation and the Ameri-

cans With Disabilities Act" attached to her Response as Exhibit D (Doc. # 29). The guidelines, at questions # 15 and # 16, indicate that an employer should not rely solely on a determination by the worker's compensation system that a worker has a "permanent disability" or is "totally disabled," and that "the employer bears the ultimate responsibility for deciding whether an employee with a disability-related occupational injury is ready to return to work," as opposed to doctors, or rehabilitation counselors. *Id.* at p. 327–28.

Initially, the Court notes that the first page of the guidelines indicates that they became effective at the earliest, on 9/3/96, more than two years after the last alleged act of discrimination occurred in June of 1994. Secondly, even with the assistance of the guidelines it is not at all clear that Porsche engaged in any unlawful discriminatory conduct.

The guidelines, and logic, indicate that an employer may use the opinions of physicians and others to gauge the employee's abilities and limitations. Id. In the present case, besides the SIIS determination of disability, Puckett's doctors took her off work and kept her off work until March 7, 1994. Part of the reason Puckett was taken off work was because she had several surgeries performed in an effort to improve her condition. Before being taken off work, Puckett had been limited to two hours of typing or less per day; therefore, it would certainly have been reasonable for Porsche to conclude that her doctors' taking her off work meant that she was now unable to perform even the two hours of typing per day. Finally, at least on the facts of this case, it would be patently unreasonable to charge Porsche with having had a duty to second guess the decision making process of a trained physician, especially in light of the fact that Puckett was recovering from several surgeries.

## 3. Conclusions

There is no material issue of fact regarding whether or not Puckett was a qualified individual with a disability. At the time of her termination, Puckett was totally disabled

as evidenced by her sworn statements on various forms and her doctors' notes taken at the time she was off work. Puckett's deposition testimony to the effect that she could perform some of her job is not corroborated by any evidence and should not be allowed to create an issue of fact. Finally, Porsche's reliance on Puckett's doctors was not unreasonable. What remains are Puckett's arguments that Porsche's termination of Puckett was unreasonable, and that Porsche breached its duty to rehire her after she was released to light duty.

## B. Unreasonable Termination and Failure to Rehire

At oral argument, Puckett's counsel argued that there was an issue of fact remaining concerning whether Porsche's termination of Puckett was unreasonable in light of the fact that Dr. Christensen's notes on December 14, 1993 stated that "hopefully she can do some light work when I see her back in 3–4 weeks." Def.'s Mot. Summ. J. Exh. # 5 (Doc. # 26).

■ First, it should be clear that this statement is certainly not a confirmation of the fact that Puckett *would* be returning to work in three to four weeks. Secondly, this statement in no way indicates what duties Puckett will be capable of performing, other than light work. Third, on December 7, 1993 Christensen also wrote, after surgery on her left wrist, "I do not think she will be able to go back to working as a secretary with a lot of writing and typing." *Id.* These two statements do nothing to show that Porsche should have left Puckett's position open any longer than it ultimately did. In short, Porsche's termination of Puckett two weeks later was not unreasonable in light of the information held by Porsche, since at the time she was fired it was unclear when Puckett would return and in what capacity, and Porsche did not have a duty to keep Puckett's position open indefinitely. *See Hudson v. MCI Telecommunications Corp.*, 87 F.3d 1167, 1169 (10th Cir.1996).

Porsche also argues that it would have been an undue hardship to continue to delegate Puckett's responsibilities to others on a long term basis, and deprosse's testimony

seems to bear this assertion out. Depo. of Jim deprosse p. 106, 111–112, Def's Mot. Summ. J. Exh. # I (Doc. # 26). Finally, Puckett's testimony to the effect that one of the reasons Cathy Lignowski quit doing the data entry was because she didn't have time to do it substantiates that having another employee perform this task would cause undue hardship. Depo. of Jean Puckett, p. 132, *Id.* Exh. # 7.

■ The final issue remaining concerns Porsche's failure/refusal to rehire Puckett after she was released to light duty in March 1994. Rehiring is specifically addressed in the EEOC regulations:

> It is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual with a disability in regard to:
>
> (b) Hiring, upgrading, promotion, award of tenure, demotion, transfer, layoff, termination, right of return after layoff, *and rehiring;*

29 CFR § 1630.4 (1994) (emphasis added).

Puckett was released to work in a light duty capacity on March 7, 1994, three months after her termination at Porsche, and nine months after she began her extended leave. By the time she was released, Porsche had already filled her position with another employee. Depo. of Jim deprosse p. 101, 81–82 Def.'s Mot. Summ. J. Exh. # 1 (Doc. # 26). As stated, Porsche was under no obligation to keep Puckett's position open indefinitely, and at the time she was fired it was unclear when Puckett would return and in what capacity. *See Hudson v. MCI Telecommunications Corp.*, 87 F.3d at 1169.

Puckett's argument essentially is that even if her former position was not available, Porsche should have found another position for which she was qualified. There are several problems with this argument.

The first problem is the lack of proof that Porsche even had anything available for which she was qualified. *See Malek v. Martin Marietta Corp.*, 859 F.Supp. 458, 467 (D.Kan.1994) (plaintiff must prove the existence of an available position); Kennedy, 90 F.3d at 1481 ("[a] plaintiff bears the burden

of demonstrating that she can perform the essential functions of her job with or without reasonable accommodation") (citing *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir.1990)).

Puckett's evidence consists of broad and conclusory allegations that Porsche has "huge resources" and "a human resource department which could have potentially assisted her," and that Puckett could at least have been offered a position as a "receptionist answering phones" or could have done "any of the tasks she was so proficient at performing." Pl.'s Resp. at p. 2 (Doc. # 29). Puckett's only other evidence appears to be her deposition testimony, where the following colloquy took place:

Q: And what are these other positions or shifts that were available at the time, could you please describe those?

A: The job position which was mine without the data entry.

Q: Well, this is plural, it says other positions, so let's talk about those first.

    What other positions were there?

A: I don't know.

Q: Okay. What other shifts in other positions or in your position for that matter were available?

A: I don't know.

Depo. of Jean Puckett 133:16–25, 134:1–2, Porsche's Mot. Summ. J. Exh. # 7 (Doc. # 26).

Conclusory, speculative testimony is insufficient to raise issues of fact and defeat summary judgment. *See Anheuser–Busch v. Natural Beverage Distributors*, 69 F.3d 337, 345 (9th Cir.1995) (citation omitted). Puckett is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material. Fed.R.Civ.P. 56(e).

Puckett faces additional hurdles as well. The ADA does not require an employer to reallocate essential job functions, create new jobs, or reassign disabled employees to positions that are already occupied. *See* 29 C.F.R. § 1630.2(*o*) Pt. 1630.2(*o*), § 1630.9; *Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488, 1492 (M.D.Ala.1994) ("[r]easonable accommodation, however, does not require that an employer create a light duty position or a new permanent position").

However, the ADA does require that an employer attempt to place a disabled employee elsewhere in the company if possible: "Reasonable accommodation may include job restructuring, part-time or modified work schedules, reassignment to a vacant position, appropriate adjustments or modifications of . . . policies, and other similar accommodations." 42 U.S.C. § 12111(9). This section is of no assistance to Puckett however. Reassignment is only available to employees, not to applicants. 29 C.F.R. Pt. 1630 App., § 1630.2(*o*) (1994). Since Puckett was discharged she is more properly classified as an applicant than as an employee.

Even assuming that the ADA requires that an employer attempt to reassign a former employee whose job has been filled during the period of her absence due to a work related injury, the only job she names with any specificity is her former job, and that position was filled. Regarding other positions in the company, Porsche has put forth the letter of June 13, 1994 which indicates that nothing was available within the parameters of Puckett's restrictions. Def's Mot. Summ. J. Exh. # 6 (Doc. # 26). Puckett fails to produce any admissible evidence that there was a position available at Porsche for which she qualified. Her mere assertion that in effect states, "in a company as large as Porsche, there must be something available," is insufficient to create a triable issue of fact, and summary judgment should be granted.

## III. CONCLUSION

The evidence before the court shows that at the time of her termination Puckett was totally disabled, and remained that way until approximately March 7, 1994. Her deposition testimony that she was able to perform some portions of her job should not be allowed to contradict her prior sworn statements that she was totally disabled, and should not be allowed to create an issue of fact. While it does not appear that Puckett is attempting to deceive the court or is attempting to play fast and loose with the judicial system, it does seem likely that Puckett is testifying with the benefit of hindsight. While it may now be clear to Puckett

that the primary source of her injury was data entry on a ten-key pad, she should not be allowed to contradict statements made at the time she was injured with testimony to the opposite effect three years later. This after acquired knowledge should not be allowed to counter the fact that at the time she was terminated, she, and her doctors, believed Puckett to be totally unable to work. Finally, Porsche had no duty to rehire Puckett absent a showing that there was some position available at Porsche for which she qualified, and summary judgement is therefore appropriate.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendant Porsche Cars of North America's Motion for Summary Judgment (Doc. # 26) be **GRANTED** in full.